UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE CHANG, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>   Defendant. | Case No. 19-cv-01973-HSG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 37 |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") moves to dismiss this putative class action complaint (Dkt. No. 1 ("Compl.")) under Fed. R. Civ. P. 12(b)(6), Dkt. No. 37 ("Mot."). Briefing on the motion is complete. Dkt. No. 46 ("Opp."); Dkt. No. 49 ("Reply").

Annie Chang, Tiger Chang Investments, LLC, Asians Investing in Real Estate, LLC, Melanie Gonzales, Gary Gonzales, and G&M You-Nique Property LLC ("Plaintiffs") allege three causes of action: (1) Aiding and Abetting Fraud; (2) Aiding and Abetting Breach of Fiduciary Duty, and (3) Negligence. Compl. at ¶¶ 143-176. For the reasons below, the Court **DENIES** Defendant's motion to dismiss as to (1) Aiding and Abetting Fraud and (2) Aiding and Abetting Breach of Fiduciary Duty, and **GRANTS WITH LEAVE TO AMEND** as to (3) Negligence.

**I.   BACKGROUND**

Plaintiffs bring this putative class action alleging Wells Fargo aided and abetted an alleged Ponzi scheme (the "Equitybuild Scheme" or the "Scheme") conceived by non-parties Jerome and Shaun Cohen (the "Cohens") and their entities Equitybuild, Inc. and Equitybuild Finance, LLC fka Hard Money Company, LLC (collectively, "Equitybuild"). Equitybuild solicited investors by promising them returns generated by investments in a real estate investment program that purchased, renovated, and developed real estate in Chicago. *Id*. ¶¶ 20–21. The Cohens raised funds through offering and selling promissory notes, and offering investments in real estate pooled

"funds" (with names such as "Chicago Capital Fund"). *Id.* ¶ 35. However, the Equitybuild Scheme was a "sham," as the Cohens "raised money from investors through misrepresentations and omissions, siphoned much of it, improperly commingled it, used it for Ponzi payments to other investors, and skimmed between 15% and 30% off each investment by taking undisclosed fees." *Id.* ¶ 4. This came to light on August 15, 2018, when the SEC filed a complaint in the Northern District of Illinois against Equitybuild and the Cohens, charging them with fraud under U.S. securities laws. *Id.* ¶ 60.

According to Plaintiffs, Wells Fargo was the only bank that Equitybuild used for the Scheme, and all transactions were processed through Wells Fargo. *Id.* ¶ 95. Among other allegations, Plaintiffs contend that Wells Fargo "knew the accounts it maintained for Equitybuild held investor money, in a fiduciary capacity," *id.* ¶ 66, "had knowledge, or was on notice of the fact that investor money was being misused and misappropriated, and at risk of misuse and misappropriation," *id.* ¶ 67, "was aware that Equitybuild had received far less money from property managers into the Equitybuild accounts than what investors were paid in 'interest' out of those same accounts," *id.* ¶ 68, "knew that Equitybuild was managing investor funds, and that those funds were commingled among Equitybuild's various accounts with Wells Fargo, *id.* ¶ 93, and that "Equitybuild's contact at Wells Fargo 'seemed like she was willing to do pretty much anything' for Jerry Cohen." *Id.* ¶ 109.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

2

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a claim. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b), which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

## III. CHOICE OF LAW

Defendant has applied California law in its motion because a "fulsome choice of law analysis is not currently feasible on the facts as pled." Mot. at 5. Plaintiffs have not addressed this issue, but have also applied California law. *See, e.g.*, Opp. at 5. A federal court sitting in diversity applies the choice-of-law rules of its forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 589 (9th Cir.2012) (citation and quotations omitted). Because Plaintiffs have

1  not disputed the application of California law, and the parties both apply California law in their
2  papers, the Court will do so as well.

## IV. DISCUSSION

### A. Count One: Aiding and Abetting Fraud

To plead a claim for aiding and abetting under California law, Plaintiffs must plead that the Defendant either: "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 2005) (citations and quotations omitted);[1] *see also Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016) (*citing Casey*, 127 Cal. App. 4th at 1144).[2]

The Court notes that this case and those like it present something of an oddity. Plaintiffs cannot sue the actual perpetrators of the alleged fraud, because the court presiding over the SEC enforcement action has enjoined civil lawsuits against them. *See* Compl. ¶ 25. There is a good reason for that injunction: the receiver appointed in the SEC enforcement action is responsible for locating the alleged fraudsters' assets and ensuring that they are equitably distributed to victims in an orderly manner. But the injunction also creates an incentive for victims to do what Plaintiffs are doing here: bring a separate lawsuit against the fraudsters' deeper-pocketed financial institution under a theory of "aiding and abetting," or based on the financial institution's own purported negligence. These claims seem irresistibly easy to allege via assertions, given the significant financial exposure Defendant will face if the allegations survive the motion to dismiss stage. *See Evans v. ZB, N.A.*, 779 Fed.Appx. 443, 449 (9th Cir. 2019) ("There are no specific allegations here. What we really have is a sympathetic case, a vague and lengthy complaint, and a series of common banking practices dressed up in ominous language.") (Bea, J., dissenting).

No doubt in part for this reason, the California courts have recognized that "[r]econciling

---

[1] In their papers, the parties appeared to disagree as to the elements of California aiding and abetting. But at the hearing, counsel agreed that *Casey* sets the standard. Dkt. No. 57 at 4-5.
[2] *Bradshaw* and other unpublished Ninth Circuit decisions cited in this Order are not precedent, but may be considered for their persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

4

1 these competing principles within the sensitive context of a claim against a bank for aiding and

2 abetting a customer's wrongdoing depends on a strict application of the pleading requirement for

3 the knowledge element of the aiding and abetting claim." *Casey*, 127 Cal.App.4th at 1152. In

4 California state courts, this means that "on demurrer, a court must carefully scrutinize whether the

5 plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided

6 and abetted." *Id.* While in federal court the familiar *Twombly/Iqbal* standard controls, the

7 California courts' recognition of the need to carefully vet this type of claim is illuminating as this

8 Court does its best to predict how the California Supreme Court would assess Plaintiffs' state law

9 aiding and abetting claims. *See Evans*, 779 Fed.Appx. at 449 (noting that "California courts find

10 'actual knowledge' present only in 'extreme circumstances,' and have refused to hold banks liable

11 in far more egregious cases" than *Evans*) (Bea, J., dissenting) (*citing Chazen v. Centennial Bank*,

12 61 Cal.App.4th 532, 537 (Cal. Ct. App. 1998) *and Casey*, 127 Cal. App. 4th at 1145); *see also*

13 *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (instructing that

14 "[w]hen interpreting state law … a federal court must predict how the highest state court would

15 decide the issue" and that "where there is no convincing evidence that the state supreme court

16 would decide differently, a federal court is obligated to follow the decisions of the state's

17 intermediate appellate courts").

18     All of this being said, the Court now turns to its analysis of each of the elements.

19     **i. Actual Knowledge**

20     "California courts have long held that liability for aiding and abetting depends on proof the

21 defendant had actual knowledge of the specific primary wrong the defendant substantially

22 assisted." *Casey*, 127 Cal. App. 4th at 1145. "A defendant can be held liable as a co-tortfeasor on

23 the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed,

24 and acted with the intent of facilitating the commission of that tort." *Id.* at 1146 (*citing Gerard v.*

25 *Ross*, 204 Cal. App. 3d 968, 983 (Cal. Ct. App. 1988)).

26     Defendant does not dispute that the underlying, primary violation has been adequately

27 pled, Opp. at 6, and the SEC presumably would agree. Instead, Defendant contends that Plaintiffs

28 fail to sufficiently allege that Wells Fargo had actual knowledge of fraud by the Cohens or

5

Equitybuild. Mot. at 6–13; Reply at 3–10.

As an initial matter, the Court notes that Plaintiffs do allege, directly, that Defendant knew that Equitybuild was committing the fraud allegedly aided and abetted. While less than overwhelming in its detail (and even, arguably, somewhat cagey on this pivotal point), the Complaint contains the allegation that:

> Pursuant to its [Bank Secrecy Act/Anti-Money Laundering Act] duties, Defendant had an opportunity to review, and reviewed Equitybuild and its accounts, thus learning that . . . (d) Equitybuild and the Cohens were misusing investor funds from the Equitybuild accounts, by commingling such funds and transferring them to the Cohens and other entities whose business was unrelated to Equitybuild's real estate investment and lending; (e) Equitybuild and the Cohens were misusing investor money for Ponzi payments; [and] Equitybuild was primarily a Ponzi scheme, not a real business.

Compl. ¶ 88; *see also id.* ¶ 96 (alleging that "pursuant to its BSA/AML duties as well as its manual processing of a massive number of wires in the accounts [Wells Fargo] had a full and complete view of Equitybuild's accounts and regularly reviewed them, and thus acquired knowledge of the misappropriation and misuse of investor funds in Ponzi fashion").[3]

This sort of direct allegation (really, assertion) of actual knowledge is a critical threshold consideration in cases applying California aiding and abetting law in circumstances like these. *See, e.g.*, *Casey*, 127 Cal. App. 4th at 1152 (noting that complaint "contain[ed] no allegation the banks knew [fiduciaries] were misappropriating funds from [company], or that the money deposited by the [fiduciaries] into the Fraudulent Entities' accounts belonged to [company]"); *Evans*, 779 Fed.Appx. at 445 ("Plaintiffs allege that, by 2009, [defendant bank] had discovered [fraudster] was operating a fraud on investors …"); *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 WL 1526394 at * 3 (N.D. Cal. Apr. 15, 2010) (distinguishing *Casey* by

---

[3] Defendant accurately points out that in two paragraphs of the Complaint, Plaintiffs muddy the waters by alleging that Wells Fargo alternatively may only have been "on notice" of the Scheme, which would not be enough to show actual knowledge. *See* Compl. ¶ 67 ("Wells Fargo had knowledge, or was on notice of the fact that investor money was being misused and misappropriated, and at risk of misuse and misappropriation."); *id.* ¶ 173. Plaintiffs respond that the "on notice" language applies only to the negligence claim. Opp. at 8. While the Court disagrees that Defendant "misconstrues the Complaint," given that nothing in paragraph 67 limits the allegation in the way Plaintiffs now contend, it appears from paragraph 173 that Plaintiffs meant to limit the "on notice" allegation to the negligence cause of action. In any amended complaint, Plaintiffs must make this explicit.

6

noting that "Plaintiffs allege that [defendant banks] knew that [fraudster] and his associates were perpetrating the Ponzi scheme, *i.e.*, the fraudulent sale of CDs to innocent investors, whose funds were ultimately used by the Ponzi participants for their own personal benefit"); *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003) (allegation of actual knowledge sufficient where "the complaint assert[ed] that the Banks knew [fraudster] was committing fraud and was breaching his fiduciary duties to class members," and that "each bank actively participated in [fraudster's] Ponzi scheme with knowledge of his crimes").

If a plaintiff directly alleges actual knowledge, the next question is whether the complaint pleads sufficient facts to make that allegation plausible as required by *Twombly*. *See Evans*, 779 Fed.Appx. at 445 ("Thus, we first determine whether [complaint] specifically alleges that [defendant bank] knew [fraudster] was representing itself as a legitimate business and misappropriating funds, and whether Plaintiffs have alleged specific supporting facts that make their allegations of actual knowledge plausible."); *Benson*, 2010 WL 1526394 at * 3, *5 (noting that "Plaintiffs support[ed] these allegations of knowledge with more detailed factual allegations," and taken together these allegations satisfied the *Twombly/Iqbal* plausibility requirement).

The Court finds that the Complaint here meets this standard. Plaintiffs allege a number of facts in support of their claim that Wells Fargo actually knew that Equitybuild was commingling money from investors. For example, Wells Fargo processed all transactions and reviewed the accounts as part of its due diligence, Compl. ¶ 134, and, as noted, "manually processed a massive number of wires that on their face indicated that they deposited investors proceeds in the Equitybuild accounts maintained by Wells Fargo, to be managed and/or invested by Equitybuild." *Id.* ¶ 91. Plaintiffs also plausibly support their allegations of actual knowledge by alleging that Wells Fargo deviated "from the standard course of business," *id*. ¶ 103, and made available and accepted for use a "modified version of its Direct Deposit Authorization Forms to apply to the payment of investment distributions to Equitybuild investors." *Id*. ¶¶ 103–06.

In further support of the plausibility of the allegations of actual knowledge, Plaintiffs allege that Wells Fargo was the only financial institution Equitybuild used, and explain that Wells Fargo processed transactions for the Equitybuild Scheme "including the payments *from investors*

7

via wire instructions into its Equitybuild accounts and the payments *to investors* via direct deposits from those same accounts." *Id*. ¶ 118 (emphasis in original). And the Complaint alleges that Wells Fargo knew Equitybuild frequently bounced checks for thousands of dollars due to depleted funds in the Equitybuild accounts, which also supports the plausibility of the allegation of knowledge of the fraudulent scheme. *Id*. ¶ 124.

Plaintiffs also allege that Wells Fargo's records, as reviewed by an SEC "staff accountant," support the plausibility of their claim that Wells Fargo knew of the alleged fraud. These records reflected that: (1) "investor proceeds were used to make payments to Jerome Cohen, Shaun Cohen, and LLCs they own and control," *id*. ¶ 130, (2) "Jerome Cohen and Shaun Cohen used this money to pay for living expenses," *id*. ¶ 131, and (3) investors from January 2015 through February 2017 "received $14.5 million in interest payments from Equitybuild," while the money transferred to Equitybuild from "property managers and third-party buyers' monthly payments amounted to only $3.8 million." *Id*. ¶ 133.[4]

While Defendants repeatedly argue that Plaintiffs must plead details like "*who* reviewed Equitybuild and its accounts," "*when* the accounts were allegedly reviewed," "*what* was learned about the 'nature of Equitybuild's business," or "*how* anyone at Wells Fargo *actually discovered* anything," Reply at 4, that is not the standard at this stage. *See Lorenz v. East West Bancorp, Inc.*, No. 2:15-cv-06336-CAS(FFMx), 2016 WL 199392 at * 7 & n.4 (C.D. Cal. Jan. 14, 2016) ("For purposes of pleading an aiding and abetting fraud claim, … actual knowledge of the underlying fraud may be averred generally," and "need not be pled with the particularity typically required by Rule 9(b)") (internal quotation marks and citations omitted). Whether Plaintiffs will be able to

---

[4] Defendant contends that Plaintiffs improperly seek judicial notice of a declaration supporting these allegations because "(1) Plaintiffs failed to properly move or request judicial notice, and (2) even if they had, '[c]ourts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed.'" Reply at 15 (*citing California Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017)). Plaintiffs contend that the Court may consider the declaration because it is referenced in the Complaint. *See* Compl. ¶ 131; *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of documents referenced in the complaint). The Court **DENIES** the request for judicial notice as moot, because the Complaint contains sufficient allegations to survive the motion to dismiss, meaning that there is no need to refer to the declaration.

8

*prove* their allegation of actual knowledge is a question for another day. Accordingly, viewing all of the allegations together, the Court finds that the Complaint pleads facts sufficient to establish the plausibility of Plaintiffs' claim that Defendant had actual knowledge of the fraud allegedly aided and abetted.

### ii. Substantial Assistance

"Substantial assistance requires a significant and active, as well as a knowing participation in the wrong," and "a plaintiff must [also] allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff." *In re Mortgage Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015); *Am. Master Lease LLC v. Idanta Partners, Ltd*, 225 Cal.App.4th 1451, 1476 (Cal. Ct. App. 2015) ("plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered") (citations omitted). Defendant contends that ordinary banking services, "especially in the absence of actual knowledge that the receipts or transfers were fraudulent," cannot constitute substantial assistance. Mot. at 14. Defendant also contends that Plaintiffs' allegations do not demonstrate that Wells Fargo took any affirmative actions to assist in the alleged fraud, making these "failure-to-act allegations … woefully insufficient." *Id*. at 14–15.

Under California law, once Plaintiffs have pled knowledge, even "'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort." *Casey*, 127 Cal. App. 4th at 1145. Allegations of substantial assistance must also "be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neilson*, 290 F. Supp. 2d at 1132 (citation omitted). Because Plaintiffs have adequately pled actual knowledge, the issue becomes whether the allegations of substantial assistance are specific enough to satisfy Rule 9(b).

Plaintiffs have alleged active, specific, and detailed conduct by Defendant, which in at least one instance departed from typical services offered, and which, as alleged, played a role in assisting, enabling, and furthering the Scheme. For example, Plaintiffs allege substantial

9

assistance in the form of: (1) receiving investor money in Equitybuild's accounts, Compl. ¶ 149(a), (2) permitting and helping Equitybuild to commingle investor money, *id.* ¶ 149(b), (3) divesting and misdirecting a significant portion of the investors' money to the Cohens' personal accounts, *id.* ¶ 149(d), and (4) permitting and helping Equitybuild misuse investor money for Ponzi payments to earlier investors. *Id.* ¶ 149(e). Plaintiffs also allege more than Defendant's inaction: they allege active conduct in the form of, for instance, "modifying and/or accepting and using modified Direct Deposit Authorization forms," *id.* ¶ 149(c), "divesting and misdirecting a significant portion of the investors' money to the Cohens' personal accounts," *id.* ¶ 149(d), and "transferring Ponzi scheme payments to investors" *Id.* ¶ 149(e).

Given that the Court has found actual knowledge sufficiently pled, these additional facts are enough for substantial assistance. *See Benson*, 2010 WL 1526394, at *4 (finding substantial assistance adequately pled where plaintiffs alleged that defendant bank "allow[e]d [fraudster] and his associates to deposit investor monies into the Nevada LLCs' accounts, permitt[ed] them to commingle funds within the Nevada LLCs' accounts, allow[ed] [fraudster] and the Nevada LLCs to transfer large amounts of investment deposits to offshore banking accounts, allow[ed] [fraudster] to use investor monies to pay for personal expenses, and authoriz[ed] remote banking platforms that prevented oversight.").

\* \* \* \* \*

Plaintiffs have adequately pled a claim for aiding and abetting fraud, and Defendant's motion to dismiss that claim is **DENIED**.

### B. Count Two: Aiding and Abetting Breach of Fiduciary Duty

Under California law, "[t]he elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal.App.4th 328, 343 (Cal. Ct. App. 2014). For the same reasons detailed above, Plaintiffs have pled actual knowledge of the Scheme, that Wells Fargo had actual knowledge of Equitybuild's status as a fiduciary, and that the

Defendant substantially assisted in the conduct that contravened a fiduciary duty.

For example, Plaintiffs allege that "Wells Fargo knew the accounts it maintained for Equitybuild held investor money, in a fiduciary capacity, and that the Equitybuild managers owed a fiduciary duty to investors as to the money invested in those accounts," Compl. ¶ 66. The Complaint also details federal authorities that require Wells Fargo to understand and review the business of its customers, the Cohens and Equitybuild. *Id.* ¶¶ 76, 80. Plaintiffs further explain that Wells Fargo learned the nature of Equitybuild's business, *id.* ¶ 87, reviewed Equitybuild and its accounts and learned that Equitybuild and the Cohens were managing investor money as fiduciaries pursuant to its BSA/AML duties, and learned that the Wells Fargo accounts held fiduciary funds. *Id.* ¶ 88. Plaintiffs also sufficiently allege knowledge of a breach of fiduciary duty as to the investor money in Wells Fargo accounts being managed by the Cohens and Equitybuild. *Id.* ¶ 161 (alleging that Wells Fargo "was aware that the Equitybuild Scheme Perpetrators were breaching their fiduciary duties to the investors by (1) commingling investor money; (2) misusing and misappropriating investor money intended to be invested in various Equitybuild investment programs and instead improperly transferring such money to the Cohens; (3) using new investor funds deposited in such accounts to make 'interest payments' to the existing investors, in typical and obvious Ponzi scheme fashion; and (4) running a 'shell' operation to cover up the Ponzi scheme, where in reality the income deposited into the Equitybuild accounts from the underlying real estate properties was far less than the amount of money being disbursed to investors as 'interest payments'"). And as discussed above, Plaintiffs have sufficiently alleged substantial assistance. *Id.* ¶ 162.

Once again, it is unnecessary for Plaintiff to allege who at Wells Fargo knew that Equitybuild owed depositors a fiduciary duty, or when or how they acquired such knowledge. Accordingly, the Court concludes that the allegations are sufficient to state a claim for aiding and abetting breach of fiduciary duty, and Defendant's motion to dismiss this claim is **DENIED**.

### C. Count Three: Negligence

The last cause of action alleges that Wells Fargo owed "a duty to safeguard and manage Plaintiffs' and class members' funds in accordance with [their] expectations as investors in the

Equitybuild funds" or, in the alternative, owed "a duty of care because Wells Fargo (a) knew that a fiduciary relationship existed between Equitybuild and investors; (b) knew that it held fiduciary funds in Equitybuild's Wells Fargo accounts; (c) knew and/or was on notice that investor funds were being misappropriated and/or were at risk of being misappropriated." *Id*. ¶¶ 172, 173.

Defendant contends that Plaintiffs cannot allege negligence because Wells Fargo did not owe a duty to Plaintiffs—who are not customers—and even if they did, Plaintiffs fail to plead that Wells Fargo breached its duty of care or proximately caused Plaintiffs to lose their investments. Mot. at 16–19. In order to plead a claim for negligence under California law, a plaintiff must establish the following elements: (1) the existence of a legal duty of care, (2) a breach of that duty, and (3) proximate cause resulting in injury. *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (Cal. Ct. App. 2013) (citation omitted).

### i. Legal Duty of Care

The Court perceives some tension in California court decisions as to whether and when a bank can owe a duty of care to a noncustomer. The *Casey* court held that "under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." 127 Cal. App. 4th at 1149; *see also id.* at 1150 (explaining that "a bank has no duty to 'police' accounts, even fiduciary or trust accounts") (*citing Chazen*, 61 Cal. App. 4th at 537). But the California courts recognize a qualifier to this statement of law: "*absent extraordinary and specific facts*, a bank does not owe a duty of care to a noncustomer." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479 (Cal. Ct. App. 1996) (emphasis added) (citations omitted).

This raises the question: what sorts of facts are "extraordinary and specific" enough to trigger a duty to noncustomers notwithstanding the general rule? The California courts have recognized that banks have been held to be subject to a duty of care toward nondepositors "only in narrow factual circumstances." *Chazen*, 61 Cal. App. 4th at 545. The *Chazen* court spelled out the scope of those narrow circumstances: each case finding such a duty "involved the bank's liability for allowing a person to deposit a check, payable to someone else, into a personal account, under circumstances that should have alerted the bank to the possibility of fraud." *Id.*; *see also*

*Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 695 (Cal. 1978) ("The duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit.").[5] So it appears that the California courts have never found a duty to noncustomers beyond that exceptionally narrow and specific set of facts, and it is unclear whether any other basis for a negligence cause of action can be stated as a matter of law. *See Chazen*, 61 Cal. App. 4th at 545 (noting that "[w]hether or not the principles underlying the *Sun 'n Sand* line of decisions may be applied in other areas of banking activity," the appellants in that case had failed to state facts giving rise to any duty of care to nondepositors).[6]

The gravamen of Plaintiffs' claim here is that Wells Fargo owed noncustomers a duty to police Equitybuild's accounts, a duty to prohibit a customer from receiving and distributing money out of the same account, or a duty to prevent a customer from "commingling" funds. Plaintiffs point to the following allegations that they contend are extraordinary and specific: (1) Wells Fargo was aware that the Equitybuild promoters were raising money from investors for an ostensible real estate investment program that the promoters managed, Compl. ¶¶ 6, 30, 31, 36, (2) the investors deposited money in the Scheme's bank accounts and the investor money was fiduciary (trust) funds, *id.*, (3) Wells Fargo allowed the funds in its accounts to be transferred by the Equitybuild Scheme's perpetrators, *id.*, (4) Wells Fargo used a modified payroll form that was applied to pay distributions to investors, in an attempt to conceal the nature of the payments from compliance scrutiny, *id.* ¶¶ 32, 102-19, (5) Wells Fargo saw the instances of commingling and Ponzi payments by Equitybuild, in its accounts, *id.* ¶¶ 5, 30, 31, 36, and (6) numerous large checks were being bounced by Equitybuild. *Id.* ¶¶ 11, 124.

The Court finds this theory inviable as a matter of law, in that it is inconsistent with the

---

[5] Plaintiffs misrepresent the holding of *Chazen* by entirely omitting the immediately preceding discussion of check fraud, then claiming the case establishes a general principle that "banks owe duties to non-customers, 'under circumstances that should have alerted the bank to the possibility of fraud.'" Opp. at 23.

[6] Plaintiffs' attempt to rely on non-California (and often out-of-circuit) authority to bolster their position regarding the nature of this duty, Opp, at 21-22, adds nothing on the relevant question, which is purely one of California law.

13

California cases discussed above holding that banks owe no such duty to noncustomers. And the Complaint does not allege the sort of facts sufficient to take this case outside the normal rule and bring it within the very limited exception for forged checks carved out in *Sun 'n Sand* and cases following it. Moreover, Plaintiffs' claim that cases like *Chazen* and *Software Design* "have been rendered obsolete by the anti-money laundering regulations enacted in the 2000s and 2010s," Opp. at 23 n.20, is both beside the point (since no California court has suggested that these cases are no longer good law) and legally flawed. It is clear that the Bank Secrecy Act creates no private right of action, and thus cannot be the basis for imposing the duty Plaintiffs assert. *See Sterling Sav. Bank v. Poulsen*, No. C -12-01454 EDL, 2013 WL 3945989, at *19 (N.D. Cal. July 29, 2013) (*citing In re Agape Litig.*, 681 F. Supp. 2d 352, 361 (S.D.N.Y. 2010) ("because the Bank Secrecy Act does not create a private right of action, the Court can perceive of no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements")).

Accordingly, the Court finds that the facts pled are not "extraordinary and specific" so as to establish the existence of a duty of care under California law. The Court will grant leave to amend, but cautions Plaintiffs that, absent sufficient allegations of some sort of affirmative conduct by Wells Fargo suggesting it expressly took on a direct duty to Plaintiffs, as opposed to a purported "duty to safeguard" or "duty to investigate" inconsistent with California law, this claim will be dismissed without leave to amend next time. *Compare Aifang v. Velocity VII Limited P'ship*, No. CV 14-07060 SJO (MANx), 2015 WL 12745806 at * 6-7 (C.D. Cal. Sept. 30, 2015) (noting that bank "purportedly represent[ed] to [p]laintiffs that the account was in fact a trust," wrote a letter to plaintiffs that "on its face identifie[d] a possibly invalid trust," and "allowed the funds in the trust account to be disbursed on the basis of forged checks and remote transfers").[7]

### ii. Breach or Proximate Cause

Even if Defendant did owe a duty to Plaintiffs to police Equitybuild's accounts, Plaintiffs have not alleged that Wells Fargo learned anything by way of its BSA/AML obligations that

---

[7] To the extent that the *Aifang* court characterized the standard as whether "the complaint includes allegations that should have alerted [the bank] that a wrong was being perpetuated," *id.* at * 6, this Court does not read California cases to establish any duty of care that broad.

14

would transform bank transactions into a negligent act. Plaintiffs contend that Wells Fargo breached a duty by "receiving money via wire transfer," "overseeing the commingling of [] funds," "executing transactions," "modifying [and/or accepting] Direct Deposit Authorization Forms," and "transferring payments" to investors. Compl. ¶ 175. Plaintiffs similarly fail to allege anything other than a conclusion that Wells Fargo proximately caused their alleged injuries. *Id*. ¶ 176 ("Plaintiffs and members of the Class who deposited Equitybuild funds into Wells Fargo's dedicated accounts were injured as a proximate result of Wells Fargo's negligence."). Plaintiffs make no plausible allegation that, but for any action or inaction by Wells Fargo, Plaintiffs would not have lost their investments. Dismissal of the negligence claim is thus warranted on this ground as well.

\* \* \* \* \* \*

Because Plaintiffs fail to allege duty, breach, and causation, the Court **GRANTS** Defendant's motion to dismiss the negligence cause of action, with leave to amend consistent with this Order.

## V. CONCLUSION

The Court **DENIES** Defendant's motion to dismiss as to (1) Aiding and Abetting Fraud and (2) Aiding and Abetting Breach of Fiduciary Duty, and **GRANTS WITH LEAVE TO AMEND** Defendant's motion to dismiss as to (3) Negligence.

The Court **DIRECTS** Plaintiff to file any amended complaint within 28 days of this Order. Plaintiffs shall not add any new claims or new parties in any amended complaint.

**IT IS SO ORDERED.**

Dated: 4/7/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge