**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| ANNIE CHANG, TIGER CHANG INVESTMENTS, LLC, ASIANS INVESTING IN REAL ESTATE, LLC, MELANIE GONZALES GARY GONZALES, and G&M YOU-NIQUES PROPERTY LLC, Individually and On Behalf of All Others Similarly situated,<br><br>    Plaintiffs,<br><br> vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case Number: 4:19-cv-01973-HSG<br><br>STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION |
|---|---|

1. <u>PURPOSE</u>

This Stipulated Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. <u>COOPERATION</u>

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. <u>LIAISON</u>

Each party will identify an "E-discovery Liaison" who will be primarily responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will, at a minimum:

 a. Be knowledgeable about the party's e-discovery efforts;

 b. Be, or have reasonable access to those who are, familiar with the party's systems that may contain relevant information in this case in order to explain those systems and answer

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

1

relevant questions about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter; and

    c.    Be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

The parties will rely on the E-Discovery Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4.    <u>PRESERVATION AND COLLECTION</u>

The parties will take reasonable and proportional steps to preserve potentially relevant non-duplicative ESI in their possession, custody or control. The parties also will disclose the names and titles/roles of custodians and sources from which they are collecting documents in response to the document requests, allegations and potential defenses.

5.    <u>SEARCH METHODOLOGY</u>

The parties agree that if search terms, date filters, or technology assisted review is used to cull data prior to review, the party using such filters will disclose them to opposing counsel and provide the receiving party the opportunity to propose additional terms, where needed. At the request of any party and in order to assist the parties in resolving search term disputes, the producing party agrees to provide "hit reports" for proposed search terms, where providing such hit reports does not pose an undue burden. The hit reports shall include, where reasonably feasible, the total number of documents that were collected across custodians and sources, the number of documents hit by each term, the number of documents hit and pulled in as families by each term, the number of unique documents hit by each term, and finally, the aggregate number of documents hit by each list of search terms, including document families. A party, however, may not request that an inordinate number of hit reports be run. The parties will meet and confer in good faith regarding a reasonable number search terms and/or terms and connectors be tested. In addition, the parties will meet and confer should there be any disagreement regarding search terms or other filtering methods used. No search term will be added to the list if it generates an

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

2

unreasonable number of nonresponsive documents or creates an undue burden. Focused terms and queries, rather than overbroad queries should be employed.

A producing party may collect some documents without using search terms, but instead doing "targeted" collections from custodians or sources based on documents custodians identify in interviews or other discussions with counsel or by collecting folders or other sources identified as containing responsive materials. No party has a duty to collect and process all data from certain sources and run search terms if such collection, processing and searching creates an undue burden or is not proportional to the needs of the case or where targeted collections are a more efficient and effective way to gather the materials.

In the event that a party believes that validation of the search term process may be necessary, the parties will meet and confer over what that validation process will be and what testing and/or statistics will be disclosed.

The parties agree that, if they unilaterally select and apply search terms or a search methodology without meeting and conferring with the receiving party to reach an agreed-upon process, they may have to supplement or revisit their searches, if the searches prove to be inadequate, using a methodology agreed-upon by the parties or approved by the Court.

The parties acknowledge that there may be subsequent instances where potential modification to a previously agreed-upon search protocol may be warranted. Should such an instance arise, the parties agree to meet and confer about methods to search ESI if either party requests such a meet and confer. If a party requests such a meet and confer, the parties will meet and confer within seven days or within another time period agreed up on by the parties.

6.   PRODUCTION FORMATS

   a.   Hard Copy Documents:

All hard copy documents should be scanned and produced as single-page, Group IV, 300 DPI Tagged Image File Format (.TIFF or .TIF) images with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). The database/metadata load file should contain the metadata fields listed in EXHIBIT A, to the extent such metadata exists and extraction is reasonably feasible. The text file should contain that document's OCR text unless

the party chooses not to OCR the document if, for example, the burden to OCR the documents outweighs the benefit.  In that case, the party will produce the documents as they are kept in the ordinary course of business and provide the Bates ranges of documents that have not been OCRed and the receiving party may choose to OCR the documents themselves if they wish. When a producing party OCRs documents, the OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images with the quality setting 75% or higher or the documents may be produced in native format. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

b. <u>Electronically Stored Information:</u>

ESI is to be produced in 300 DPI Group IV black and white TIFF files. The TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images. This includes, but is not limited to, color on graphs, charts, presentations, edits, or highlights.

Any responsive document that cannot be converted to TIFF format shall be represented in the production with a placeholder TIFF image that bears the legend "This document cannot be converted to TIFF," or similar language, along with its corresponding metadata in the Concordance DAT file.

During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, potentially relevant metadata values should be extracted and produced in the database/metadata load file.

The metadata values that are to be extracted and produced in the database load files (.DAT file using concordance standard delimiters), where the metadata fields exist and the extraction is reasonably feasible, are the fields identified for electronic data on Exhibit A.

7. <u>SYSTEM FILES EXCLUDED</u>

Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

8. <u>FAMILIES OF DOCUMENTS</u>

To the extent a document is part of a "document family" with a combination of privileged and non-privileged documents, the privileged documents will be represented in the production with a placeholder TIFF image that bears the legend "Document Withheld as Privileged" or similar text. The TIFF image(s) shall be endorsed with a sequential Bates number. If nonresponsive documents are attached to a family and not produced, a TIFF placeholder will be placed in place of the document that bears the legend, "Document Withheld as Nonresponsive" or similar text. Although some documents may seem to be non-responsive as stand-alone materials, when determining the responsiveness of such documents in families, reviewers should review the documents in the context of the family as a whole, to ensure they understand the full context of the attachments before determining responsiveness.

9. <u>DEDUPLICATION</u>

Removal of duplicate documents may be done for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level and deduplicating only identical families) and may be done across custodians. A party may also deduplicate non-inclusive email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message; that all previous emails in the thread reflect full sender, recipient, and date and time stamp information; and provided that the software used to identify these "non-inclusive" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced, assuming the thread is responsive and nonprivileged. Where a prior email contains an attachment, that email and attachment shall not be removed as a "non-inclusive thread." To the extent that deduplication is

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED
INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

5

used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial. The custodian associated with the first copy of a document processed will be considered the primary custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). Each production shall include an "All Custodian" field listing of every custodian or source collected for production and who/which possessed a duplicate document and where the document was deduplicated during processing. The "All Custodian" field will be updated by the producing party via an overlay file if rolling collections result in changes to the field post-production.

10. <u>HANDWRITTEN NOTES, TRACK CHANGES OR OTHER ALTERATIONS</u>

If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, handwritten note, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting, or redlining.

The receiving party may request production of a color copy (in native or otherwise) of a document if it determines that such a color copy will assist in deriving the meaning of the document.

If a document contains track changes and/or comments, the producing party shall image the document showing the tracked changes and/or comments.

11. <u>PRODUCTION OF EXCEL, OTHER SPREADSHEETS, AND POWERPOINTS</u>

MS-Excel spreadsheets and other spreadsheets should be produced in native format with a TIFF placeholder bearing the legend "Produced in Native File Format" or something similar. PowerPoint documents should be produced in native format and in TIFF image format. The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number. The metadata load file shall contain a link to the produced

native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

To the extent MS-Excel spreadsheets contain information subject to a claim of privilege, they shall be produced in the form of a redacted .TIFF image (if the TIFF image can be rendered in a readable format) or the producing party may redact the Excel in native format by inserted "Redacted-Privileged" in the redacted portions of the Excel as long as the producing party keeps a pristine copy of the Excel and identifies the documents that are natively redacted by way of a field or in the production cover letter.

12. <u>PRODUCTION OF STRUCTURED DATA OR OTHER FILES NOT COVERED</u>

If a database or other source of structured data contains responsive information that cannot be produced in a reasonably useable format, the parties should promptly meet and confer to determine a mutually-agreeable format for production of the responsive data.

13. <u>PASSWORD PROTECTED FILES</u>

The parties will make reasonable proportional efforts to ensure that all responsive encrypted or password-protected documents and ESI are successfully processed for review and production. To the extent encrypted or password-protected documents are successfully processed, the parties have no duty to identify further the prior encrypted status of such documents. To the extent security protection for such documents and ESI cannot be successfully processed despite reasonable efforts and a party has identified the documents as potentially responsive, the producing party shall notify the requesting party about such documents prior to production and the parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such encryption or password protection with respect to the production of available metadata. When producing such encrypted files, the producing party shall: (a) produce a slip sheet stating that the documents cannot be decrypted or something similar; and (b) provide the metadata required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

7

14. **PRODUCTION OF AUDIO AND VIDEO FILES**

If any audio and/or video recordings are responsive, and the producing party cannot produce the recordings in a reasonably useable format, the parties should meet and confer to determine a mutually-agreeable format for producing the audio and/or video recording. Before meeting and conferring, the producing party will have information sufficient to identify responsive audio and/or video recordings.

15. **BATES NUMBERING AND CONFIDENTIALITY DESIGNATION**

Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI but need not be included in the extracted text of ESI.

16. **REDACTIONS**

Each redaction on a document shall be endorsed with the word "Redacted" or "Redaction," or something similar, with that word being included in the text provided for the document. Alternatively, the producing party may produce a field in the DAT file denoting which documents contain redactions.

To the extent a natively produced document needs to be redacted because it contains information subject to the attorney-client privilege or any other privilege or protection from disclosure, the native document may be TIFFed and the redactions applied, or the party may redact the document natively if the document cannot be TIFFed in a readable format (such as Excel spreadsheets, as noted above).

17. **PRIVILEGE LOGS**

For all documents withheld or redacted on the basis of privilege, the parties agree to furnish logs that comply with the legal requirements under federal law, but at a minimum will include the following information unless providing such information would be disproportional and impose an undue burden, given the number of privileged documents and in that case, the parties will meet and confer regarding an alternate process:

    a.    A Document ID or Bates Number for each entry on the log.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

8

  b. The date of document. For emails, this should be the sent date of the document and for loose ESI this should be the last-modified or create date of the document or if those dates are not available, another reasonably available date.

  c. The Author of the document. For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

  d. If the document is an e-mail, the Subject Line of the e-mail (unless the Subject Line itself contains privileged information).

  e. Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated. For emails, this shall include, in addition to the Recipient(s)' name(s), the e-mail address for each recipient, if that information is reasonably available in one of the metadata fields.

  f. A description of why privilege is being asserted over the document.

  g. If a document has attachments, the attachments will be separately logged if they are also being withheld for privilege.

  h. The type of privilege being asserted, e.g., AC for Attorney/Client or WP for Attorney Work Product.

  The parties shall identify on their logs the name(s) of counsel providing the advice/who is relevant to the privilege claim in the description (17(f)).

  A party shall only be required to include one entry on the privilege log to identify withheld emails that constitute an e-mail chain or string, provided, however, that the privilege log entry for any e-mail chain or string:  (1) shall identify that the emails are part of an email chain or string; (2) shall identify the senders and recipients of the top e-mail in the chain, and (3) any third parties

in the chain will be identified in the privilege log description (17(g)) along with a description of the third parties' relationship to the client. Should a party have questions about all recipients in particular e-mail chains on the log, the parties will meet and confer and provide additional information where necessary and where obtaining the information does not involve an undue or disproportional burden. If a party is only reviewing inclusive e-mail threads, it will add to the log the recipient metadata (to/from/cc/bcc) for the non-inclusive threads associated with the inclusive threads on the log.

Privilege logs shall be provided in searchable Microsoft Excel format.

Privilege logs may be produced on a rolling basis. The producing party shall provide the first Privilege Log within thirty (30) days of the first production date and then supplemental logs thereafter will be provided at regular intervals. Privilege log entries for redacted and/or withheld documents in a specific production or that are family members to documents in a specific production shall be produced within 30 days after each specific production is made. In addition, a final log will be produced 20 days following the last production date.

Documents presumptively not to be logged on a privilege log include:

a.  Communications exclusively between a party or its counsel of record or in-house counsel handling this matter dated after the commencement of the Action.

b.  Work product created by counsel of record in this action, an agent of counsel of record, or a party at the direction of counsel of record or in-house counsel handling this action, dated after commencement of the Action.

The parties agree that no party is required to conduct a search or prepare a privilege log for any discovery request or portion thereof to which objections have been made until the objections have been overruled.

The parties agree that no discovery shall be conducted, absent good cause shown, as to topics relating to discovery on discovery, retention policies, search efforts in this matter, and/or documents or information that are classic work product or privileged such as materials generated by attorneys in this case, Wells Fargo's in-house counsel and/or those working under their direction or supervision as a result of this lawsuit.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

10

1  18.  MODIFICATION

2  This Stipulated Order may be modified by agreement of the parties or by the Court for

3  good cause shown.

4  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

6  DATED: May 26, 2020                    */s/ Eve H. Cervantez*
                                          ALTSHULER BERZON LLP
7                                         Eve H. Cervantez

8                                         *Attorneys for Plaintiffs Annie Chang, Tiger Chang Investments, LLC, Asians Investing i*
9                                         *Real Estate, LLC, Melanie Gonzales, Gary Gonzales, and G&M You-Niques Property*
10                                        *LLC*

12  DATED: May 26, 2020                   */s/ Nellie E. Hestin*
                                          MCGUIREWOODS LLP
13                                        Nellie E. Hestin (*pro hac vice*)

                                          *Attorneys for Defendant Wells Fargo Bank, N.A.*
14

15  PURSUANT TO STIPULATION, IT IS SO ORDERED.

17  DATED:   5/27/2020                    [signature: Haywood S. Gilliam Jr.]

18                                        United States District/~~Magistrate~~ Judge

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

11

**ECF ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the other signatories thereto.

Executed this 26th day of May, 2020, in San Francisco, California.

*/s/Eve H. Cervantez*

Eve H. Cervantez

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

12

# EXHIBIT A

# METADATA FIELDS

| Field Name | Description | Example / Format | Applicable File Types |
|---|---|---|---|
| **BEGBATES** | The Document ID number of first page of the document. | ABC0000001 | E-mail, E-Doc and Other[1] |
| **ENDBATES** | The Document ID number of the last page of a document. | ABC0000003 | E-mail, E-Doc and Other |
| **BEGATTACH** | The Document ID number of the first page of the parent document. | ABC0000001 | E-mail, E-Doc and Other |
| **ENDATTACH** | The Document ID number of the last page of the last attachment. | ABC0000008 | E-mail, E-Doc and Other |
| **CONFIDENTIALITY** | The level of confidentiality assigned to the document by Counsel | Confidential | E-mail, E-Doc and Other |
| **PGCOUNT** | The number of pages in a document. (image records) | Numeric | E-mail, E-Doc and Other |
| **CUSTODIAN** | The custodian / sources of a document from which the document originated. | Smith, Joe | E-mail, E-Doc and Other |
| **ALLCUSTODIANS** | Other custodians the producing party agreed to produce who had the file but where the file was eliminated through de-duplication | Smith, Joe; Doe, Jane | E-mail, E-Doc |
| **RECORD TYPE** | The type of document / record. | Email, hard copy, loose eFile | E-mail, E-Doc and Other |
| **EMAIL SUBJECT** | The subject line of the e-mail. | | E-mail |
| **EMAIL FROM** | The display name and e-mail of the author of an e-mail. | Joe Smith <jsmith@email.com> | E-mail |
| **EMAIL TO** | The display name and e-mail of the recipient(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |

---

[1] Other is defined as documents maintained in image file format or that were scanned from hard copy.

| Field Name | Description | Example / Format | Applicable File Types |
|---|---|---|---|
| EMAIL CC | The display name and e-mail of the copyee(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |
| EMAIL BCC | The display name and e-mail of the blind copyee(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |
| NUMBER OF ATTACHMENTS | The number of attachments to a parent. | Numeric | E-mail; Edoc |
| ATTACHMENT NAME | The original file name of attached record. | Attach1.doc | E-mail; Edoc |
| DATE RECIEVED[2] | The date the document was received. | MM/DD/YYYY | E-mail |
| RECEIVED TIME | The time the document was received. | HH:MM | E-mail |
| DATE SENT | The date the document was sent. | MM/DD/YYYY | E-mail |
| SENT TIME | The time the document was sent. | HH:MM | E-mail |
| IMPORTANCE | E-mail Importance Flag. | Normal, Low, High | E-mail |
| CONVERSATION INDEX | ID used to tie together e-mail threads. | 01C72AC4C | E-mail |
| TIME ZONE FIELD | The time zone that the data is set to when processed. | PST, CST, EST, etc. | E-mail; Edoc |
| FILE NAME | The file name of a native document. | Document Name.xls | E-doc |
| AUTHOR | The author of a document from extracted metadata. | jsmith | E-doc |
| TITLE | The extracted title of the document. | Table of Contents | E-doc |
| RELATIVITY NATIVE TYPE | Native file application. | Microsoft Excel, Word, etc. | E-doc |
| FILE EXTENSION | The file extension of a document. | XLS | E-doc |
| HIDDEN CONTENT | Field noting whether there are hidden columns in Excel, and track changes in Word. This may be provided in separate fields (Excel Hidden Columns; Excel Hidden Rows; Excel | Y,N,Blank | E-doc |

---

[2] Date and Time fields for all date and time fields shown in Exhibit A may be combined in one field.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION
CASE NUMBER: 4:19-CV-01973-HSG

14

| Field Name | Description | Example / Format | Applicable File Types |
|---|---|---|---|
| | Hidden Sheets; Powerpoint Hidden Slides; Track Changes) | | |
| **DATE CREATED** | The date created field | MM/DD/YYYY | E-doc |
| **FILE CREATE TIME** | The time created field | HH:MM | E-doc |
| **DATE LAST MODIFIED** | The date the document was last modified. | MM/DD/YYYY | E-doc |
| **DATE LAST ACCESSED** | The date the document was last accessed. | MM/DD/YYYY | E-doc |
| **APPOINTMENT START [3]** | Date of calendar appointment entry. | MM/DD/YYYY | Calendar Items |
| **TIME APPOINTMENT START** | Start time of calendar appointment entry. | HH:MM | Calendar Items |
| **APPOINTMENT END** | End date of calendar appointment entry | MM/DD/YYYY | Calendar Items |
| **TIME APPOINTMENT END** | End time of calendar appointment entry. | HH:MM | Calendar Items |
| **FILESIZE** | The file size of a document (including embedded attachments). | Numeric | E-doc |
| **ORIGINAL FOLDER PATH** | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items | E-doc; Email |
| **MD5HASH** | The MD5 Hash value or de-duplication key assigned to a document. | | |
| **NATIVELINK** | The full path to a native copy of a document. | D:\NATIVES\ABC000001.xls | |
| **FULLTEXT** | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named | D:\TEXT\ABC000001.txt | |

---

[3] As with the other date fields, appointment fields may have date and time combined in one field.

| Field Name | Description | Example / Format | Applicable File Types |
|---|---|---|---|
| | with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | | |