1  **MCGUIREWOODS LLP**
   David C. Powell SBN #129781
2  dpowell@mcguirewoods.com
   Carolee Anne Hoover SBN #282018
3  choover@mcguirewoods.com
   Two Embarcadero Center
4  Suite 1300
   San Francisco, CA 94111-3821
5  Telephone: 415.844.9944
   Facsimile: 415.844.9922
6
   **MCGUIREWOODS LLP**
7  K. Issac deVyver, *Pro Hac Vice*
   kdevyver@mcguirewoods.com
8  Nellie Hestin, *Pro Hac Vice*
   nhestin@mcguirewoods.com
9  260 Forbes Avenue
   Suite 1800
10 Pittsburgh, PA 15222
   Telephone: 412.667.7909
11 Facsimile: 412.667.7993

12                  **UNITED STATES DISTRICT COURT**

13                **NORTHERN DISTRICT OF CALIFORNIA**

14

15

16 ANNIE CHANG, TIGER CHANG              CASE NO. 4:19-cv-01973-HSG
   INVESTMENTS, LLC, ASIANS
17 INVESTING IN REAL ESTATE,LLC,         **DEFENDANT WELLS FARGO BANK,**
   MELANIE GONZALES GARY                 **N.A.'S NOTICE OF MOTION AND**
18 GONZALES, and G&M YOU-NIQUE           **MOTION TO STAY CASE**
   PROPERTY LLC, Individually and On
   Behalf of All Others Similarly situated,  *(Proposed Order filed concurrently)*
19
                  Plaintiffs,            Date:    June 17, 2021
20                                       Time:    2:00 p.m.
          vs.                            Place:   Courtroom 2
21
   WELLS FARGO BANK, N.A.,               Complaint Filed: April 12, 2019
22
                  Defendant.            *Honorable Haywood S. Gilliam, Jr.*
23

24

25

26

27

28

---

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 17, 2021, at 2:00 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will and hereby does move the Court for an order temporarily staying the above-captioned case pending the resolution of the first claims process estimated to conclude by December 31, 2021 in *SEC v. Equitybuild, Inc., et al.*, Case No. 18-cv-05587 (N.D. Ill. August 15, 2018) (the "Receivership Action"), which is in the process of liquidating assets of entities Equitybuild, Inc. and Equitybuild Finance, LLC (collectively, "Equitybuild"), which Plaintiffs allege perpetrated the Ponzi scheme underlying this case.  The claims process and the distribution of Equitybuild assets in the Receivership Action will directly affect the viability of the claims of Plaintiffs and the class members they purport to represent, and are material to the Court's ability to fairly and completely adjudicate this matter. Moreover, in light of the proceedings in the Receivership Action and the discovery that will be taken from each claimant in that matter, considerations of judicial economy also weigh heavily in favor of a stay pending those proceedings.  This motion is made pursuant to the Court's inherent power to control its docket and stay a case pending resolution of independent proceedings that may bear on the case pending before this Court.

This Motion is based upon this Notice of Motion and Motion for Stay, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and exhibits attached thereto, the Declaration of David C. Powell, the papers filed in this action, argument of counsel at the hearing, and upon such other matters as the Court may allow.

DATED: March 12, 2021              **MCGUIREWOODS LLP**

By:  */s/ David C. Powell*
David C. Powell
Attorneys for Defendant Wells Fargo Bank, N.A.

-1-

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL ALLEGATIONS AND BACKGROUND ....................................... 2

        A.      The SEC Action Against Equitybuild ................................................. 2

        B.      Plaintiffs' Complaint and Case Background ........................................4

III.    LEGAL STANDARD ........................................................................ 5

IV.     ARGUMENT ................................................................................... 6

        A.      Inequity Will Result From Proceeding While Materials Issues of Claim
                Viability and Damages, with Preclusive Effect and Involving Highly Relevant
                Discovery, Are Being Adjudicated in the Receivership Action............................6

                1.      The Receivership Court's Claims Determination Will Have Preclusive
                        Effect In This Case ...........................................................................6

                2.      The Potential for Reduced or Eliminated Damages Favors a Stay ..........9

                3.      The Parties and the Court Should Have the Benefit of Material
                        Information from the Receivership Action Before Briefing and
                        Deciding Class Certification and Summary Judgment............................10

        B.      Plaintiffs Will Not be Materially Harmed By a Stay of These Proceedings
                Pending the Resolution of the First Claim Group in the  Receivership
                Action ............................................................................................12

        C.      Judicial Economy and the Orderly Course of Justice Strongly Weigh in Favor of
                a Stay ............................................................................................14

V.      CONCLUSION ................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Trump,*
    No. C17-0135JLR, 2017 WL 1057645 (W.D. Wash. Mar. 17, 2017) ................................. 6

*Aliphcom v. Fitbit, Inc.,*
    154 F. Supp. 3d 933 (N.D. Cal 2015) ........................................................................... 12

*Clayton v. Synchrony Bank,*
    219 F. Supp. 3d 1006 (E.D. Cal. 2016) ........................................................................ 14

*CMAX, Inc. v. Hall,*
    300 F.2d 265 (9th Cir. 1962)....................................................................... 5, 6, 12, 14

*Erceg v. LendingClub Corp.,*
    475 F. Supp. 3d 1071 (N.D. Cal. 2020) ........................................................................ 13

*Ezeude v. PayPal, Inc.,*
    No. 17-CV-02558-LHK, 2017 WL 5479654 (N.D. Cal. Nov. 15, 2017) ................ 9, 11, 14

*Gentry v. Cellco P'ship,*
    No. CV 05-7888 (VBKx), 2006 WL 6927883 (C.D. Cal. Mar. 22, 2006) .......................... 6

*Giotta v. Ocwen Financial Corp.,*
    No. 15-cv-00620-BLF, 2016 WL 4447150 (N.D. Cal. Aug. 24, 2016)............................... 7

*Gustavson v. Mars, Inc.,*
    No. 13-cv-04537-LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ......................... 6, 14

*Hawai'i v. Trump,*
    233 F. Supp. 3d 850 (D. Haw. 2017) ............................................................................ 11

*In re Autozone,*
    No. 3:10-md-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016)......................... 15

*In re Mortg. Electronic Registration Sys., Inc.,*
    754 F.3d 772 (9th Cir. 2014),
    *aff'd,* 719 F. App'x 550 (9th Cir. 2017) ........................................................................ 7

*Johnson v. Starbucks Corp.,*
    No. 18-CV-06842-KAW, 2019 WL 3220273 (N.D. Cal. Jul. 17, 2019) ............................ 12

*Kamilche Co., v. United States,*
    53 F.3d 1059 (9th Cir. 1995)........................................................................................ 7

DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO STAY CASE
CASE NO. 4:19-cv-01973-HSG

*Lal v. Capital One Fin. Corp.,*
    No. 16-CV-00674-BLF, 2017 WL 282895 (N.D. Cal. Jan 23, 2017)...................................9

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) .................................................................................... 5, 6, 14

*Leyva v. Certified Grocers of Cal., Ltd.,*
    593 F.2d 857 (9th Cir. 1997)................................................................................ 5, 6

*Nat'l Union Fire Ins. Co of Pittsburgh, PA v. Elec. Arts, Inc.,*
    No. 11-04897 JW, 2012 WL 219428 (N.D. Cal. Jan. 24, 2012).........................................14

*O'Connor v. Boeing N. Am., Inc.,*
    197 F.R.D. 404 (C.D. Cal. 2000) ...........................................................................15

*Reiser v. Marriott Vacations Worldwide Corp.,*
    No. 2:16-cv-00237-MCE-CKD, 2016 WL 1720741 (E.D. Cal. Apr. 29, 2016)..............7, 12

*Security People, Inc. v. Medeco Security Locks, Inc.,*
    59 F. Supp. 2d 1040 (N.D. Cal. 1999) ......................................................................7

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.,*
    No. 5:12-cv-04382-EJD, 2020 WL 109391 (N.D. Cal. Jan. 9, 2020)....................................10

*Vance v. Google Ltd. Liab. Co.,*
    No. 5:20-CV-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021)........................9, 11

*Virnich v. Vorwald,*
    664 F.3d 206 (7th Cir. 2011)................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiffs Annie Chang, Tiger Chang Investments, LLC, Asians Investing in Real Estate, LLC, Melanie Gonzales, Gary Gonzales, and G&M You-Nique Property LLC (collectively, "Plaintiffs") allege that they are victims in a real estate Ponzi scheme conceived by non-parties Jerome and Shaun Cohen (the "Cohens") and their entities Equitybuild, Inc. and Equitybuild Finance, LLC (collectively, "Equitybuild").  Plaintiffs allege that they invested in Equitybuild properties based on promises made to them, and other investors like them, for safe real estate investments generating 12% - 20% returns when, in reality, the Cohens were using investor money to pay off earlier investors (the "Equitybuild Scheme" or the "Scheme").  Plaintiffs contend Wells Fargo Bank, N.A. ("Wells Fargo") aided and abetted the Cohens' fraud.

The Securities and Exchange Commission ("SEC") initiated a lawsuit against the Cohens and Equitybuild., which is currently pending in the United States District Court, Northern District of Illinois, Case No. 18-cv-05587, and in which a receiver has been appointed to marshal Equitybuild's assets (the "Receivership Action") and use those assets to pay victims and creditors. The Receiver has assembled nearly 120 properties in the Equitybuild estate, has sold many of them, and continues to sell properties to liquidate the estate.  A claims process to determine entitlement and payment of damages to claimants is underway, with claims on a first tranche of properties scheduled to begin discovery in May 2021.  Because Plaintiffs and the class they purport to represent are also claimants in the Receivership Action, their individual claims for damages will be adjudicated in the Receivership Action, which will materially affect both the viability of their claims and Wells Fargo's ability to defend itself in this case.

A stay of this case until the end of the calendar year is warranted because all three *Landis* factors weigh in favor of a stay.  *First*, inequity would attain if Wells Fargo is forced to defend itself even while the viability of the individual class members' claims are being adjudicated— with preclusive effect—in the Receivership Action, and without the benefit of discovery and damages decisions from the Receivership Action.  *Second,* Plaintiffs will not be meaningfully harmed by a stay of these proceedings pending the resolution of the first tranche of claims in the

Receivership Action.  *Third*, judicial economy and the orderly course of justice strongly weigh in favor of a stay because awaiting preclusive judgments in the Receivership Action, and obtaining the concomitant discovery, briefing, and damage decisions from the Receivership Action, will streamline the analysis in this case, bring clarity to the class members' claims, and decrease, if not eliminate, the damages at issue.

Accordingly, Wells Fargo respectfully requests this Court to stay this case until December 31, 2021, at which time Wells Fargo anticipates that the court in the Receivership Action will have adjudicated the first tranche of claims, further clarifying the likely impacts of the claims resolution process on the viability and value of the claims of Plaintiffs and the putative class, and enabling the parties to brief the anticipated further impacts on this case for this Court.

## II.     FACTUAL ALLEGATIONS AND BACKGROUND

### A.     The SEC Action Against Equitybuild

On August 15, 2018, the SEC initiated suit against Equitybuild alleging that the Cohens, through their companies, violated federal securities laws by perpetrating a scheme against more than 900 investors who invested in Equitybuild properties as short-term lenders of multi-unit properties.  Ex. 1 ¶ 1.[1]  The SEC alleges that Equitybuild raised funds "by falsely promising investors safe investments, secured by income-producing real estate that generated returns of 12% to 20%."  *Id.*  The SEC also alleges that Equitybuild later changed their business model to keep their scheme afloat, and offered "investments in pooled investment funds, again promising double-digit returns generated by income-producing real estate."  *Id.* ¶ 5.  Shortly after the SEC initiated suit, the Court appointed a Receiver to take control of the Equitybuild assets and tasked the Receiver with selling the assets in the Equitybuild estate.  *See generally* Ex. 2.  Thereafter, the Cohens, without admitting or denying the allegations, agreed to the entry of a judgment against them pursuant to a partial settlement with the SEC.  Ex. 3 at 1.

---

[1] All "Ex." references are to exhibits attached to Wells Fargo's accompanying Request for Judicial Notice.

Since his appointment, the Receiver has been working to identify and sell nearly 120 properties in the Equitybuild estate; some of the properties are allegedly encumbered by both investor claims and institutional mortgages, while others are subject only to investor claims.  Ex. 4 at 3-4.  The court set a deadline of December 31, 2019 for all claims to be submitted to the Receiver.  Ex. 5.  According to the Receiver's latest update, more than 2,400 claims submissions were submitted by individuals and institutions.  Ex. 6.  As of February 1, 2021, 68 of the 117 properties in the Equitybuild estate have been sold for a net total of over $54 million, with approval of additional sales pending.  *Id.* at 2 and n.2.

In recent months, the Receivership Action reached another milestone with the court approving the process by which the Receiver is to evaluate claims, distribute proceeds, and maintain a claims documentation repository (the "Claims Process").  Exs. 7, 8.  The Claims Process is based on the Receiver's organization of the properties in the estate into groups for more streamlined adjudication of the claims against each property.  A total of 115 properties have been segregated into 8 approved groups (each hereafter referred as a "Group"), and a single summary proceeding will take place to resolve all claims against the properties within each Group.  Ex. 8 ¶ 15.  Each investor's recovery will be determined against the properties in which she invested, rather than from a sum of all of Equitybuild's liquidated assets.  *Id.* ¶ 6.  Each Group includes anywhere between 5 and 42 properties.  *Id.*  A claimant's recovery is therefore predicated on a demonstration of a valid claim against a property or properties within that Group, and such claim may be opposed by the other claimants or the Receiver for various reasons, including, for instance, that the claimant does not have a valid lien on the property or otherwise cannot sustain a claim. *Id.* ¶ 11.

In anticipation of each Group's summary proceeding, the Receiver will file a "Framing Report" outlining the properties, claimants, amounts claimed, and schedule of proceedings within that Group.  *Id.* ¶ 7.  A four-month discovery period will then commence, with standard discovery requests served on all claimants with the potential of additional written discovery.  *Id.* ¶ 9.  At the conclusion of discovery, the Receiver will then have an additional two weeks to file a report on avoidance of any claims or liens.  *Id.* ¶ 11.  Because additional discovery may be made on this

1  point, the court may adjust the schedule as necessary.  *Id.*  Absent that, the claimants and Receiver

2  will then have two months of briefing on their respective positions on the appropriate priority and

3  distribution of claims among the Group.  *Id.* ¶¶ 12-14.

4        Upon the conclusion of this briefing, the court will issue an order adjudicating each

5  claimant's entitlement to recovery.  *Id.* ¶¶ 15-16.  Within six weeks of the ruling, the Receiver

6  will file an interim distribution plan for entitled claimants, subject to a final plan of distribution.

7  *Id.* ¶ 17.

8        In addition, in parallel to the Claims Process, all claimants, including Plaintiffs and the

9  putative class, will have a six-month window (beginning no later than the kickoff of the first

10 Group's discovery) to access all Equitybuild documentation.  *Id.* ¶ 18.

11       Discovery for the first Group is to begin May 4, 2021. *Id.* ¶ 18.[2]  Given the anticipated

12 deadlines, discovery in the first Group should conclude on or around September 1, 2021, and

13 motion practice will end November 10, 2021 at the earliest, with a ruling and interim distribution

14 plan to follow, likely before year-end.

15       **B.      Plaintiffs' Complaint and Case Background**

16       On April 12, 2019, Plaintiffs filed the present suit against Wells Fargo on behalf of

17 themselves and a putative class of "all persons or entities who invested in the Equitybuild Scheme

18 and who were damaged thereby (the "Class")," asserting two counts of aiding and abetting (fraud

19 and breach of fiduciary duty), and negligence.  ECF 1, Compl. ¶ 136.  Plaintiffs' putative class is

20 therefore comprised of investors in the Scheme who will be claimants in the Receivership Action

21 seeking a recovery from the Receiver's sale of assets.  Plaintiffs contend Wells Fargo knew of or

22 was "on notice of" the Scheme and substantially assisted the Scheme by permitting Equitybuild

23 to utilize Wells Fargo's banking services.  *See* Compl.  ¶¶ 67, 96, 149, 162.  Based on these

24 allegations, Plaintiffs seek recovery from Wells Fargo for the losses the class purportedly

25 sustained at the hands of the Equitybuild scheme.  *See generally* Compl.

26

27  ───────────────
   [2] The court will schedule the same process for remaining Groups following the commencement

28 of the first Group.  *Id.* ¶ 6.

In response to Plaintiffs' Complaint, Wells Fargo filed a motion to dismiss, which the Court granted in part, dismissing the negligence claim, and denied in part, leaving only aiding and abetting claims at issue.  *See* ECF 62.  Discovery has since commenced and the Parties participated in mediation before the Honorable Andrew Guilford (Ret.) on February 4, 2021 and were unable to resolve the case.  Declaration of David C. Powell ("Powell Decl.") ¶¶ 3, 5. Following mediation, the parties discussed among themselves and with the Court the possibility of a stipulated stay pending the Receivership Action.  *Id.* ¶ 6; s*ee also* ECF 99.  On February 23, 2021, the Court held a telephonic status conference and asked the Parties to address the length of the stay and how the stay will advance the discovery and issues in this case, and ordered the Parties to meet and confer and file a revised proposed order.  ECF 101.  The Parties were not able to reach agreement on these terms, and accordingly, this Motion followed.

## III.    LEGAL STANDARD

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The court may stay a case to favor another in the interest of judicial economy or fairness to the parties. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1997) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."); *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962) (affirming *Landis* stay pending related agency proceeding because the agency action "provide[d] a means of developing comprehensive evidence bearing upon the highly technical tariff questions which [were] likely to arise in the district court case").

To determine whether a *Landis* stay should be implemented, courts consider: (1) "the

possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55). "In determining whether the third factor weighs in favor of a stay, considerations of judicial economy are highly relevant." *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014). Further, "where a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay." *Ali v. Trump*, No. C17-0135JLR, 2017 WL 1057645, at *4 (W.D. Wash. Mar. 17, 2017); *see also Leyva*, 593 F.2d at 864 (explaining that the issues involved in parallel proceedings need not be "controlling of the action before the court" for the court to issue a stay); *Gentry v. Cellco P'ship,* No. CV 05-7888 (VBKx), 2006 WL 6927883, at *8 (C.D. Cal. Mar. 22, 2006) ("Neither the parties nor the issues in a case need be identical in order for a stay to issue.").

## IV.   ARGUMENT

### A.   Inequity Will Result From Proceeding While Materials Issues of Claim Viability and Damages, with Preclusive Effect and Involving Highly Relevant Discovery, Are Being Adjudicated in the Receivership Action

A stay is warranted because Plaintiffs' and the putative class's claims and damages are being adjudicated in the Receivership Action. The decisions in that Action will have preclusive effect in this case, and the attendant discovery and briefing in the Action also bears upon Wells Fargo's ability to defend itself here. Notably, the entry of the Claims Process in the Receivership Action lays out a detailed and individualized review process for the 2,000 plus claims received by the Receiver. The claims for the first Group, which includes five properties and 175 claimants, are likely to be adjudicated within the calendar year. The adjudication of the claims in the Receivership Action may bar certain of the Plaintiffs' and the putative class's claims from re-litigation by collateral estoppel in this case, will establish to extent to which they will have any remaining damages to pursue in this action, and will provide relevant discovery bearing on Wells Fargo's defenses that it would not otherwise have access to absent a stay.

1          **1.      The Receivership Court's Claims Determination Will Have Preclusive**
2                  **Effect In This Case**

3          "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated

4  in previous litigation between the same parties."  *Kamilche Co., v. United States*, 53 F.3d 1059,

5  1062 (9th Cir. 1995).  The party asserting collateral estoppel must show: "(1) the same issue of

6  fact or law; (2) was actually litigated and determined in the former proceeding; (3) the issue was

7  actually decided by a valid and final judgment; (4) the determination of the issue was necessary

8  to the judgment; and (5) the party against whom collateral estoppel is asserted had a full and fair

9  opportunity to litigate the issue."  *Security People, Inc. v. Medeco Security Locks, Inc.*, 59 F.

10  Supp. 2d 1040, 1045 (N.D. Cal. 1999).  A plaintiff's claims previously taken in pursuit of or under

11  the auspices of the court-supervised receivership are subject to preclusive effect in subsequent,

12  separate actions.  *See, e.g., Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011) (holding receivership

13  court's prior determination of waiver barred plaintiff's claims under issue preclusion doctrine).

14          First as to the issues of fact or law to be decided, the question of whether Plaintiffs and

15  the putative class are entitled to damages as a result of the Scheme forms the basis of both cases

16  here:  In the Receivership Action, each class member must show that they are entitled to recovery

17  as a result of being defrauded by Equitybuild.  That same question—whether Equitybuild

18  committed an actionable tort against each class member—is also a predicate determination

19  underlying Plaintiffs' claims that Wells Fargo aided and abetted such torts against the putative

20  class.  *See, e.g., Reiser v. Marriott Vacations Worldwide Corp.*, No. 2:16-cv-00237-MCE-CKD,

21  2016 WL 1720741, at *9 (E.D. Cal. Apr. 29, 2016) ("Without an underlying tort,

22  Plaintiffs' aiding and abetting cause of action necessarily fails."); *In re Mortg. Electronic*

23  *Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (dismissing aiding and abetting claim

24  for failure to establish underlying tort), *aff'd*, 719 F. App'x 550 (9th Cir. 2017); *Giotta v. Ocwen*

25  *Financial Corp.*, No. 15-cv-00620-BLF, 2016 WL 4447150, at *6 (N.D. Cal. Aug. 24, 2016)

26  ("[A]ider and abettor liability requires actual commission of the underlying tort.").  And the

27  Plaintiffs and putative class are seeking the very same damages from the Receivership Action that

28  they concurrently seek from Wells Fargo in this case, namely, the harm they allegedly suffered

1   due to the Scheme.

2        Next, as to litigation and determination of the issues through a final judgment, the

3   Receivership Action's Claims Process is designed precisely to litigate and determine claimants'

4   entitlement to recovery from the Equitybuild Scheme, and it is reasonable to assume that the

5   Claims Process will result in a valid and final judgment, necessarily determining claimants'

6   entitlement to recovery.  This could include, for instance, whether the claimant is barred from

7   recovery for failure to state a claim, on the basis of a defense, or lacks damages entirely.

8        Further, as to the participation of the class members in the adjudication, plainly, claimants

9   have a full and fair opportunity to personally pursue their claims, and entitlement to recovery,

10  through the Receiver's Claims Process.  As noted, claimants will have access to a document

11  repository, the opportunity to participate in discovery, and the right to submit briefing to the

12  Receivership Court advocating their right to recover from Equitybuild.

13       It is thus reasonable to conclude that the Claims Process will result in adjudication of

14  putative class member's claims that has preclusive effect on Plaintiffs' and the putative class's

15  eligibility to maintain claims against Wells Fargo.  Each claim for recovery of alleged damages

16  will be adjudicated by the Receivership Court on an individual basis that will determine that

17  claimant's entitlement to recover from the Equitybuild estate.  If the court finds that an individual

18  is not entitled to recover, they will have no damages or underlying tort upon which to base their

19  aiding and abetting claims against Wells Fargo.

20       Entry of the proposed stay here will enable the parties and the Court to assess the contents

21  and scope of the Receivership Court's rulings on the first claims Group.  The Court will thus be

22  able to consider the preclusive effect of the rulings, avoid conflicting rulings, and determine what

23  issues, if any, are left for this Court to decide without the need to twice litigate or blindly assess

24  the claims of absent putative class members.  Absent a stay, Wells Fargo faces substantial

25  prejudice in defending itself against a class action while the concurrent Receivership Action

26  continues to make decisions on the merits of individualized claims that may absolve Wells Fargo

27  of liability to putative class members.  Stated differently, absent a stay, Plaintiffs and putative

28  class members will have the right to pursue their claims in two forums—this case and the

Receivership action—and Wells Fargo will be hampered in its ability to defend itself because it will be deprived of the right to rely on findings and discovery in the Receivership Action that absolve the bank.

### 2.    The Potential for Reduced or Eliminated Damages Favors a Stay

"Where a denial of stay would cause both parties to incur significant expenses on litigation that may be rendered moot, 'the potential hardship from denying the stay weighs slightly in favor of granting it.'" *Vance v. Google Ltd. Liab. Co.,* No. 5:20-CV-04696-BLF, 2021 WL 534363, at *5 (N.D. Cal. Feb. 12, 2021) (quoting *Lal v. Capital One Fin. Corp.,* No. 16-CV-00674-BLF, 2017 WL 282895, at *3 (N.D. Cal. Jan 23, 2017)).  So it is here.

In fact, where plaintiffs or class members can recover part of their damages against the perpetrators of fraud directly, courts are typically reluctant to proceed with assessing damages against a financial institution alleged to have assisted in the scheme. *Ezeude v. PayPal, Inc.*, No. 17-CV-02558-LHK, 2017 WL 5479654, at *3 (N.D. Cal. Nov. 15, 2017) ("[I]t appears that Plaintiffs and members of the putative class could potentially recover at least some of the money they lost in connection with [the Ponzi scheme] from any eventual distribution of the Receivership Estate.").  Specifically, in *Paypal,* plaintiffs alleged that they were victims of a Ponzi scheme perpetrated by third parties that used Paypal's payment processing system to perpetrate the scheme and that Paypal aided and abetted the scheme. *Id.* at *2.  Paypal moved for a stay of the proceedings against it to obtain information from a concurrent receivership action. *Id.*  The court recognized the necessity of obtaining information from a concurrent receivership proceeding over a dismantled Ponzi scheme for the benefit of the instant class action's resolution of aiding and abetting claims and granted the stay, in particular, so that issues were not subject to re-litigation upon receivership's conclusion and so that the court could conserve its judicial resources by adjudicating only the material, unanswered issues. *Id.* at *4.

Here, the Claims Process requires the Receivership Court to issue written rulings on entitlement to recovery and the amount each entitled claimant will receive based on (1) the funds recovered from the sale of the properties, (2) the claims determined to be entitled to recovery, and (3) the plan of final distribution as submitted by the Receiver.  To date, the Receiver has sold 68

of 117 properties in the Equitybuild estate, netting nearly $55 million for those sales.  Ex. 6 at 2. The Receiver is yet to finalize and report the proceeds from the sale of another 49 properties, which will presumably net millions more for the estate.  *Id.*  There is thus a significant sum of money to be distributed from the estate, some (if not all) of which will be paid to claimants who are putative class members.[3]  With recoveries at this level, there is a very real potential that a Plaintiff or putative class member will be awarded some or all of the damages she seeks.  Thus, the results of the Claims Process may wholly eliminate Plaintiffs' and the putative class's damages and moot their claims.

Relatedly, absent a stay, Wells Fargo will be forced to defend itself against any damages theory, summary judgment motion, and class certification motion without the benefit of the determination of damages entitlement and payment from the Receivership Action.  If Plaintiffs and the putative class are fully compensated for their damages in the Receivership Action—or even if they are simply subject to adjudication of the maximum damages amount to which they *could* be entitled as a result of the Scheme—while summary judgment or class certification motions are pending or decided, the parties and the Court will be forced to unravel and re-litigate the issues to take into account the judicial findings and damages award as decided in the Receivership Action.  Such re-litigation would be necessary to ensure that Plaintiffs and the putative class do not impermissibly recover duplicative damages here and in the Receivership Action.  It is well established that double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.  *See Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, No. 5:12-cv-04382-EJD, 2020 WL 109391, at *2 (N.D. Cal. Jan. 9, 2020), *appeal filed*, No. 20-15179 (9th Cir. Feb. 10, 2020).

---

[3] At least two property Groups include *only* individual claimants (and no mortgage lenders), leaving the proceeds of the sales of those properties to be distributed solely to the investor-claimants.  Ex. 8 at Exhibit A.  In the other Groups, the individual investor-claimants/class members' claims will be adjudicated as against each other and institutional mortgage lenders. *Id.*

3. **The Parties and the Court Should Have the Benefit of Material Information from the Receivership Action Before Briefing and Deciding Class Certification and Summary Judgment**

"Although it is not necessarily hardship for a party to 'litigate similar claims on a mere two fronts' hardship may nonetheless occur where there is 'the potential for inconsistent rulings and resulting confusion.'" *Vance*, 2021 WL 534363, at *5 (quoting *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 854 (D. Haw. 2017)).  While the parties in this case may also conduct their own discovery related to damages and expend resources and time to brief motions, they will not have access to the full scope of discovery considered in the Receivership Action because the two cases are progressing on different timelines.  *See PayPal*, 2017 WL 5479654, at *4 ("Thus, the Court finds that the Defendants' hardship if they were required to go forward with this case is considerable" where "any request for discovery from [Ponzi scheme entity] will likely have to be obtained from the [] Receiver.").

Under the Claims Process, claimants are entitled to access Equitybuild documentation for a six-month period, and all are required to respond to form discovery requests with the potential of additional discovery during the Group adjudications.  This discovery has not yet been made available to Plaintiffs and Wells Fargo, and, as to the responses to form discovery from the claimants/putative class members, does not even exist yet to be obtained, and will not exist until the discovery period applicable to each Group.  The parties will not have the benefit of seeking the resulting discovery if a stay is not granted because the two cases will be running on different timelines.  Likewise, there is no certainty that access to Equitybuild documentation will become available in time for the Plaintiffs and Wells Fargo to utilize the information in furtherance of their claims and defenses in this case.

Wells Fargo will need access to the discovery produced by Equitybuild and each claimant to determine whether those documents establish that there is no underlying basis for recovery by a claimant in the Receivership Action and/or as against Wells Fargo directly.  For example, if the documents provide that no underlying tort was committed against a particular claimant, then there cannot be an aiding and abetting claim asserted against Wells Fargo on behalf of that claimant. *See Reiser*, 2016 WL 1720741, at *9 ("Without an underlying tort, Plaintiffs' aiding and abetting

DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO STAY CASE
CASE NO. 4:19-cv-01973-HSG

cause of action necessarily fails.").  Similarly, if the discovery materials reflect that a claimant invested with unclean hands, then Wells Fargo should have the ability to access those documents to defend against claims for aiding and abetting asserted on behalf of that claimant.  Inability to access the discovery derived from the Claims Process will force Wells Fargo to defend against any motions for summary judgment and class certification without having full information about Plaintiffs, the putative class, the merits of their claims against Equitybuild, the merits of the aiding and abetting claims against Wells Fargo, and the Rule 23 certification factors.  This is of critical importance particularly because Plaintiffs are seeking to brief class certification in the coming months, even before fact and expert discovery is completed, thus prohibiting Wells Fargo from defending itself with discovery from the Receivership Action.  This substantial hardship weighs heavily in favor of granting the proposed stay.

### B.    Plaintiffs Will Not be Materially Harmed By a Stay of These Proceedings Pending the Resolution of the First Claim Group in the Receivership Action

The potential for damage to the opposing party as a result of a stay weighs against granting the stay, however, "[d]elay alone is typically insufficient where there is no showing of irreparable damage or injury, such as problems with preserving evidence." *Johnson v. Starbucks Corp.*, No. 18-CV-06842-KAW, 2019 WL 3220273, at *2 (N.D. Cal. Jul. 17, 2019).  Likewise, delay in the recovery of monetary damages does not amount to irreparable harm, nor does it compel the court to deny a motion to stay.  *CMAX*, 300 F.2d at 268-69 (affirming the grant of stay where plaintiff failed to demonstrate an "impressive showing of irreparable damage or injustice").  Because courts "are generally unwilling to presume delay is harmful without specific supporting evidence," a stay should be entered in the absence of concrete and material hardship to Plaintiffs. *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 938 (N.D. Cal 2015).

Here, Plaintiffs experience no ongoing harm, allege no declaratory or injunctive relief, nor assert relief for anything beyond their monetary damages—the very dollars at issue in the Receivership Action.  Further, resolution of each Group in the Receivership Action may wholly or substantially satisfy individual claims of the putative class.  During the pendency of the stay, Plaintiffs' damages will not increase and indeed can only *decrease* as claims are resolved in the

1   Receivership Action.   The very presence of potential claim preclusion demonstrates that the

2   interests Plaintiffs assert here are the same interests at issue in the ongoing Receivership Action,

3   meaning no harm or prejudice is experienced where there is a thoughtful and careful adjudication

4   of these claims continuing before the court in the Receivership Action.

5        Plaintiffs likewise cannot assert any potential prejudice on discovery matters.  Discovery

6   in this action is well underway and Wells Fargo has already provided Plaintiffs thousands of pages

7   of requested documents and correspondence.  And Wells Fargo has preservation efforts in place,

8   supporting the conclusion that the discovery process will not be impaired during the pendency of

9   a stay.  *See Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1076 (N.D. Cal. 2020)

10  ("Additionally, LendingClub confirms that it has taken steps to preserve discovery during any

11  potential stay by issuing a litigation hold notice designed to preserve evidence relevant to the

12  case.").  Plaintiffs cannot reasonably dispute that a stay will not hinder discovery between the

13  parties.

14       Indeed, a stay may assist in uncovering the full breadth of the Equitybuild Scheme.  The

15  Receiver currently acts as the exclusive custodian of all Equitybuild documentation but will allow

16  access to claimants for a six-month window, with disposal of the documents to occur thereafter.

17  Ex. 8 at ¶ 18.  Not only is Wells Fargo prejudiced by litigating without this information, but so

18  too are Plaintiffs.  Discovery produced by Plaintiffs shows that the named representatives are

19  missing pertinent investment documentation such as investment packets, signature pages, and

20  deposit and lender statements—copies of which may be held in Equitybuild's repository.  Powell

21  Decl. ¶ 4.  In fact, it has been represented by Plaintiffs that they have not been able to obtain

22  requested documentation from the Receiver to this point, which supports the notion that both

23  parties require access to these documents to fairly litigate claims and defenses.[4]  *See* ECF 97 at ¶

24  V.1.  Plaintiffs are not prejudiced by, and rather will benefit from, a stay of these proceedings

25

26  [4] Plaintiffs recently represented to the Court: "Further, communications Plaintiffs have had with
    the court-appointed Receiver in the SEC Action appear to indicate that the Receiver intends to
27  block Plaintiffs' access to the full universe of claim forms submitted in the SEC Action—which
    Plaintiffs believe is ***critical to proving their claims*** in this case."  ECF 97 at ¶ V.1.
28

because this documentation will become available before either party is forced to engage in motion practice based on a partial and inadequate set of facts.  Balancing the lack of material prejudice and the substantial and potentially irreparable hardship Wells Fargo is to face by continuing these proceedings, this Court should find that a stay is warranted.

### C.   Judicial Economy and the Orderly Course of Justice Strongly Weigh in Favor of a Stay

The orderly course of justice is "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55).  A stay should be entered where it would "be the most efficient and fairest course . . . [given] there are 'independent proceedings which bear upon the case.'"  *Gustavson*, 2014 WL 6986421, at *3 (quoting *Nat'l Union Fire Ins. Co of Pittsburgh, PA v. Elec. Arts, Inc.*, No. 11-04897 JW, 2012 WL 219428, at *1 (N.D. Cal. Jan. 24, 2012)).

Where substantial litigation is likely to occur pending resolution of a related matter that could dispose of issues in the present action, courts have held that to continue the instant action would be a "poor use of judicial resources."  *Canal Props. LLC v. Alliant Tax Credit V, Inc.*, No. C04-03201 SI, 2005 WL 1562807, at *3 (N.D. Cal. June 29, 2005) (granting stay where substantial litigation would likely take place during the pendency of an appeal of another case likely to dispose of issues in the instant litigation); *see also Gustavson*, 2014 WL 6986421, at *3 (granting stay where judicial economy is best "served if this Court does not expend the resources required to resolve a class certification motion, only to have to re-visit the decision"); *see also Clayton v. Synchrony Bank*, 219 F. Supp. 3d 1006, 1011 (E.D. Cal. 2016) (staying matter in the trial court pending resolution of a specific issue on appeal in order to preserve judicial resources). A stay is considered both efficient and fair where a related action will resolve issues pertinent to class claims or certification itself.  *See Nat'l Union Fire*, 2012 WL 219428, at *3; *PayPal*, 2017 WL 5479654, at *4 (granting stay where class damages could be reduced in concurrent action); *Gustavson*, 2014 WL 6986421, at *3.

Inherent to an efficacious judicial system is the full and fair opportunity to litigate a controversy based on the facts available.  Absent a stay, this Court is scheduled to decide issues

without the consideration of currently unobtainable evidence, which could prompt either party to later seek reconsideration of decided matters based on newly available information received from the Receivership Action.  It is neither efficient nor fair to allow the parties to carry this burden of continuous litigation on the hopes that any decision later deemed insufficient or unsupported by new evidence can be revisited.  For instance, new information, such as a ruling or evidence that certain class members cannot recover on their claims, would fairly prompt reconsideration if a class was certified.  *See, e.g., In re Autozone*, No. 3:10-md-02159-CRB, 2016 WL 4208200, at *9 (N.D. Cal. Aug. 10, 2016) (granting motion to decertify where new information rendered litigation unmanageable as a class action) (citing *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409-10 (C.D. Cal. 2000)).  Given the real threat of revisiting milestone decisions, this stay will preserve valuable judicial resources from being expended twice.

In addition, should judgment be entered against Wells Fargo (it should not), additional distributions from the Receivership Action will result in a windfall for Plaintiffs after this Court has expended its time and resources to carefully consider *actual* damages.  This is not only highly prejudicial to Wells Fargo, but it undermines the ideals of a full and fair adjudication of the merits because it essentially disregards the consideration this Court affords in determining the extent to which Plaintiffs are injured.  Granting the proposed stay would alleviate these concerns because the amounts to be recovered from the Receivership Action would no longer be pure speculation; a Group of resolved claims would be available upon which to base these inquiries.  With that information, the Court can better determine the course and schedule of these proceedings while preserving resources and promoting fairness among the litigants.

Therefore, the notions of judicial economy and the orderly course of justice weigh in favor of granting the proposed stay.

///

///

///

///

///

1

## V.     CONCLUSION

2

3

For all the reasons stated herein and documents filed in support of this motion, the Court should grant this Motion to Stay until December 31, 2021.

4

5

DATED: March 12, 2021                              **MCGUIREWOODS LLP**

6

7

By:   */s/ David C. Powell*

8

David C. Powell
dpowell@mcguirewoods.com

9

Carolee A. Hoover (SBN 282018)
choover@mcguirewoods.com

10

Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821

11

Telephone: (415) 844-9944
Facsimile:   (415) 844-9922

12

13

*Attorneys for Defendant Wells Fargo Bank, N.A.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO STAY CASE
CASE NO. 4:19-cv-01973-HSG

1

**CERTIFICATE OF SERVICE**

2

   I, David C. Powell, certify that on March 12, 2021, the foregoing document entitled

3

4

**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION**

**TO STAY CASE** was filed electronically in the Court's EFC; thereby upon completion the ECF

5

system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to

6

registered e-mail addresses of parties of record in the case.

7

8

                                  */s/ David C. Powell*
                                  DAVID C. POWELL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28