1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    ANNIE CHANG, et al.,                    Case No.  19-cv-01973-HSG

8                    Plaintiffs,             **ORDER GRANTING PRELIMINARY
                                             SETTLEMENT APPROVAL**
9          v.
                                             Re: Dkt. No. 129
10   WELLS FARGO BANK, N.A.,

11                   Defendant.

12

13          Pending before the Court is the unopposed motion for preliminary approval of class action

14   settlement filed by Plaintiffs.  Dkt. No. 129 ("Motion").  The parties have reached a settlement

15   regarding Plaintiffs' claims and now seek the required court approval.  This motion is supported

16   by the accompanying Declaration of Paul J. Scarlato ("Decl.") and the attached exhibits, including

17   the Settlement Agreement and Release ("Settlement Agreement").  Dkt. No. 129-1.  The Court

18   held a hearing on December 1, 2022.  At the Court's request, the parties submitted a supplemental

19   brief proposing a *cy pres* recipient.  Dkt. No. 135.  The parties also submitted a revised proposed

20   notice (Dkt. No. 135-4) and a revised proposed claim form (Dkt. No. 135-5).  For the reasons set

21   forth below, the Court **GRANTS** Plaintiff's motion.

22   I.     BACKGROUND

23          A.     Factual Background

24          Plaintiffs bring this putative class action alleging Defendant Wells Fargo aided and abetted

25   an alleged Ponzi scheme (the "EquityBuild Scheme" or the "Scheme") conceived by non-parties

26   Jerome and Shaun Cohen (the "Cohens") and their entities EquityBuild, Inc. and EquityBuild

27   Finance, LLC f/k/a Hard Money Company, LLC (collectively, "EquityBuild").  Dkt. No. 1

28   ("Compl.") ¶¶ 1–5; Mot. at 1 n.3.  EquityBuild solicited investors by promising them returns

United States District Court
Northern District of California

"generated by investments in a real estate investment program that purchased, renovated, and developed real estate in Chicago." Compl. ¶¶ 20–21. Through their companies, the Cohens raised funds through offering and selling promissory notes, as well as offering investments in real estate pooled "funds." *Id*. ¶ 35. Through EquityBuild, the Cohens "raised approximately $135 million from approximately 800 investors." Mot. at 1. Plaintiffs allege that the Equitybuild Scheme was a "sham," as the Cohens "raised money from investors through misrepresentations and omissions, siphoned much of it, improperly commingled it, used it for Ponzi payments to other investors, and skimmed between 15% and 30% off each investment by taking undisclosed fees." Compl. ¶ 4. This came to light on August 15, 2018, when the SEC filed a complaint in the Northern District of Illinois against Equitybuild and the Cohens, charging them with fraud under U.S. securities laws and misuse and misappropriation of investor money. *Id*. ¶¶ 58-60; Decl. ¶ 7. The SEC moved to enjoin the fraud and have a Receiver appointed (the "EquityBuild Receiver") and the court granted the motion. Mot. at 2; Decl. ¶¶ 8–9. "Since that time, the Receiver has been systematically liquidating the assets of the Receivership Estate, which consist primarily of real estate holdings." Mot. at 2.

The Receiver has performed extensive work examining EquityBuild's records, which included identifying "all persons or entities who might have a claim against the EquityBuild Scheme." Mot. at 2; Decl. ¶¶ 40–42. The Receiver's claims process identified 835 persons or entities that have claims.[1] Decl. ¶ 48. The Receiver sent notice to each of those claimants and required them to submit a clam for loss no later than July 1, 2019. *See id*. ¶¶ 41–47. The Receiver received claims from all 835 claimants. *Id*. ¶ 51. The Receiver has provided his mailing list to Plaintiffs, along with a Master Claim List with the amount of each claim for purposes of sending Notice. *Id*. ¶ 48.

According to Plaintiffs, Wells Fargo was the only bank that Equitybuild used for the Scheme, and all transactions were processed through Wells Fargo. Compl. ¶ 96. Among other

---

[1] Although the Motion states that this number includes defrauded investors (the proposed Class here) *and* other secured lenders and trade creditors (Mot. at 2), the parties clarified at the hearing that the 835 figure includes only defrauded investors.

allegations, Plaintiffs contend that Wells Fargo "knew the accounts it maintained for Equitybuild held investor money, in a fiduciary capacity," Compl. ¶ 66, "had knowledge, or was on notice of the fact that investor money was being misused and misappropriated, and at risk of misuse and misappropriation," *id*. ¶ 67, "was aware that Equitybuild had received far less money from property managers into the Equitybuild accounts than what investors were paid in 'interest' out of those same accounts," *id*. ¶ 68, "knew that Equitybuild was managing investor funds, and that those funds were commingled among Equitybuild's various accounts with Wells Fargo," *id*. ¶ 93, and that "Equitybuild's contact at Wells Fargo 'seemed like she was willing to do pretty much anything' for Jerry Cohen," *id*. ¶ 109.

   **B.   Procedural Background**

   As detailed in the Motion, this class action has a long litigation history, spanning more than three years and including numerous filings before the Court.  Mot. at 3–4.  Plaintiffs filed their Complaint on April 12, 2019, "alleging that Wells Fargo aided and abetted the EquityBuild Scheme."  Mot. at 3; *see* Compl. ¶¶66-68.  The Complaint asserted claims for 1) aiding and abetting fraud; 2) aiding and abetting breach of fiduciary duty, and 3) negligence.  *See generally* Compl.

   Wells Fargo moved to dismiss the Complaint.  Dkt. No. 37.  The Court denied Wells Fargo's motion as to Plaintiffs' first two claims regarding aiding and abetting fraud and breach of fiduciary duty but granted, with leave to amend, Defendant's motion as to Plaintiffs' negligence claim.  Dkt. No. 62.  Soon thereafter, "the parties engaged in substantial discovery concerning Plaintiffs' remaining claims, and briefed many of the issues in this Action through motion practice and mediation statements."  Mot. at 3.

   In an attempt to resolve the case, on February 4, 2021, the parties participated in a mediation before the Honorable Andrew J. Guilford (Ret.), but were unable to arrive at a resolution.  Mot. at 3; Decl. ¶¶ 31–33.  Wells Fargo then moved to stay the case pending resolution of the claims process in the SEC Action, including claims submitted by Plaintiffs.  Dkt. No. 104.  The Court denied Wells Fargo's motion. Dkt. No. 113.  The parties then resumed discovery and restarted settlement discussions.  Decl. ¶¶ 27-30, 34.  The parties have agreed to

settle this case as set out in the Settlement Agreement.  Mot. at 4; Decl. ¶¶ 34–35.

### C.   Settlement Agreement

The key terms of the parties' Settlement Agreement, Dkt. No. 129-1, Ex. A ("Settlement Agreement" or "SA"), are as follows:

#### i.   The Class

The Class consists of "all persons and entities who invested in the Equitybuild Scheme and were damaged thereby."  Settlement Agreement, ¶ 1.5; *see also* Dkt. No. 135-4 ("Class Notice").

#### ii.   Settlement Benefits

Defendant has agreed to:

> [P]ay $3,750,000 into a non-reversionary Settlement Fund for the benefit of the Settlement Class, which includes but is not limited to, payments to Settlement Class Members, payments for costs and expenses related to Class Notice as well as the implementation and administration of the Settlement, payment of Attorneys' Fees and Expenses for Class Counsel, and payment of the Service Award for the Class Representatives, as approved by the Court.

Settlement Agreement, ¶ J.

#### iii.   Monetary Relief and Plan of Allocation

The Settlement Fund consists of a payment from Wells Fargo of $3,750,000 into an escrow account.  Mot. at 4–5; Settlement Agreement, ¶ 3.1.1.  That money will be distributed by a Settlement Administrator using the Master Claims List provided to Class Counsel by the Receiver, as described above.  Decl. ¶ 49.  The Settlement Administrator will use the Master Claims List, which identifies "each claim on a property-by-property basis and the amount of claim submitted," to "pre-populate the Claim Form with the amount of claim each investor submitted in the SEC Action."  *Id.* at ¶¶ 48-49; *see also* Dkt. No. 135-5, Ex. 2 ("Claim Form").  "No amount of the Settlement Fund will revert to Wells Fargo."  Settlement Agreement ¶ 1.39.

#### iv.   *Cy pres* Distribution

Originally, the parties proposed that:

> When it is no longer feasible to make additional distributions, because of the de minimis amount of funds left in the Net Settlement Fund, the Parties propose that the unclaimed balance be donated to a private, non-profit, non-sectarian 501(c)(3) organization selected by the Parties and approved by the Court.

4

Mot. at 5; Settlement Agreement at ¶ 5.5.  At the motion hearing, the Court directed the parties to file a supplemental brief proposing a specific *cy pres* recipient.  The parties selected the Victim Connect Resource Center, a non-profit that assists "victim of investment fraud, including specifically Ponzi schemes."  Dkt. No. 135 at 1.

#### v.      Release of Claims

The Settlement Agreement defines Released Claims as follows:

> [A]ny and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that exist as of the date of the Preliminary Approval Order and that relate in any way to an investment in the Equitybuild Entities based on the facts alleged in the Complaint.

Settlement Agreement ¶ 1.29.

The Settlement Agreement further provides that:

> a)      Releasors, including but not limited to the Class Representatives, on their own behalf and on behalf of each Settlement Class Member, by operation of this Release and the Judgment and the Final Approval Order, do hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of Releasees from any and all Released Claims and, without further action by any person or the Court, will be deemed: to have consented to dismissal of the Action and the dismissal with prejudice of any and all Released Claims;
> b)      to have released and forever discharged any and all Released Claims; and
> c)      to be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, each and every Released Claim.

Settlement Agreement, ¶ 10.1.  The parties also "agree that Releasees will suffer irreparable harm if any Settlement Class Member takes action inconsistent with this paragraph, and that in that event, Releasees may seek an injunction as to such action without further showing of irreparable harm in this or any other forum."  *Id.*

### vi.    Notice to the Class and Settlement Website

Each member of the Class will be sent a notice of the Settlement ("Settlement Notice") and Claim Form "via first class mail through the United States Postal Service, postage pre-paid no later than thirty (30) days after Class Counsel provides [the Settlement Administrator] with the Notice List."  Settlement Agreement, ¶ 7.3; Decl. ¶¶ 49–50.  The notice shall direct Class Members to "the Settlement Website which shall contain copies of the Settlement Agreement and Exhibits including the Class Notice as well as the Complaint, the Preliminary Approval Order, motions for approval of the Settlement and Attorney's Fees and Expenses, and the Final Approval Order and Judgment."  Settlement Agreement, ¶ 7.7; Class Notice at 2-4, 7.  The Settlement Website shall remain open and accessible until at least sixty (60) days following entry of the Final Approval Order.  Settlement Agreement, ¶ 7.7.  The Settlement Notice and Claim Form will provide information to the Class regarding, among other things: (1) the nature of the claims; (2) the scope of the settlement class; (3) the terms of the Settlement; (4) each Class Member's pre-populated recovery amount; (5) Class Members' right to object to the Settlement or to opt-out and the deadline for doing so; (6) the class-wide release; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of any Service Awards requested for Class Representatives; (9) the date, time, and location of the Final Approval Hearing; and (10) Class Members' right to appear at the Final Approval Hearing.  *See* Class Notice; Dkt. No. 135-5 ("Claim Form").

### vii.    Opt-Out Procedure

Settlement Class Members must submit a written request for exclusion to opt out of the Settlement.  Settlement Agreement ¶¶ 11.1-11.2.  Settlement Class Members may also submit written objections to the Settlement.  *Id.* ¶ 12.2.

## II.    PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale*

6

*Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, No. 22-131, 2022 WL 16909174 (U.S. Nov. 14, 2022) (stating that "plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence").  Class certification is a two-step process.  First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When "deciding whether to certify a litigation class, a district court must consider manageability at trial."  *Id.*  However, this concern is not present in certifying a settlement class.  *Id.* at 556–57.  Instead, in deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id.* at 557.

### A.   Rule 23(a) Certification

#### i.   Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable."  The Court finds that the numerosity requirement is satisfied because joinder of the estimated 835 class members would be impracticable.

#### ii.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class."  *Parra v. Bashas', Inc.*, 536 F.3d

1    975, 978–79 (9th Cir. 2008).  "What matters to class certification . . . is not the raising of common

2    'questions' — even in droves — but rather, the capacity of a class-wide proceeding to generate

3    common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350 (citation

4    omitted) (emphasis in original).  Even a single common question is sufficient to meet this

5    requirement.  *Id.* at 359.

6               Common questions of law and fact in this action include:

7                    [W]hether the EquityBuild Scheme perpetrators defrauded investors,
                    misused investor money, and/or commingled investment proceeds from
8                    different investment programs, whether the EquityBuild Scheme was a
                    Ponzi scheme, whether Wells Fargo knew that the EquityBuild Scheme
9                    perpetrators were misusing and comingling investor money and/or using
                    such money for Ponzi scheme payments, whether Wells Fargo
10                   knowingly provided substantial assistance to the EquityBuild Scheme
                    perpetrators, whether Wells Fargo's misconduct entitles Plaintiffs and
11                   members of the Class to damages for the loss of the amounts invested by
                    Plaintiffs and the members of the Class, and what remedies are
12                   appropriate. . .

13   Mot. at 18.  Although the amount of reimbursement to which each class member is entitled will

14   differ, the issues described above are common across the proposed Settlement Class.

15   Accordingly, the Court finds that the commonality requirement is met.

16               **iii.    Typicality**

17               Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

18   of the claims or defenses of the class."  "The test of typicality is whether other members have the

19   same or similar injury, whether the action is based on conduct which is not unique to the named

20   plaintiffs, and whether other class members have been injured by the same course of conduct."

21   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).  That said,

22   under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical."

23   *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quotation omitted).

24               The Named Plaintiffs' claims are both factually and legally similar to those of the

25   proposed Class Members.  Named Plaintiffs allege that, like other class members, they "were

26   investors in the EquityBuild Scheme and suffered the exact same type of loss."  Mot. at 19.

27   Accordingly, the typicality requirement is satisfied.

28

United States District Court
Northern District of California

8

United States District Court
Northern District of California

### iv.      Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either the Named Plaintiffs or Plaintiffs' counsel have a conflict with other class members. Plaintiffs have secured representation by competent counsel, including counsel experienced in complex class action cases. *See* Mot. at 20; *see generally* Dkt. No. 129-1, Ex. B. The Court finds that Named Plaintiffs and Plaintiffs' counsel have prosecuted this action vigorously on behalf of the class to date and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### B.      Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

### i.      Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotation omitted). A common question, on the other hand, is one where "the

9

1    same evidence will suffice for each member to make a prima facie showing [or] the issue is

2    susceptible to generalized, class-wide proof."  *Id.* (quotation omitted).

3            The Court concludes that, for purposes of settlement, common questions regarding

4    Defendant's alleged misconduct and the resultant harm to Plaintiffs predominate over

5    individualized issues.  Plaintiffs allege that Defendant "aided and abetted the EquityBuild

6    Scheme."  Mot. at 3; *see also* Compl. ¶¶ 19, 30–32, 36.  All class members were affected by

7    Defendant's alleged misconduct.  *See* Mot. at 19; *see also* Compl. ¶ 1.  Although class members

8    will need to rely upon individual evidence to show the extent of their loss, the "mere fact that there

9    might be differences in damage calculations is not sufficient to defeat class certification."

10   *Hyundai II*, 926 F.3d at 560 (quotation omitted).  Additionally, the methodology for measuring

11   damages is applicable class wide.  *See* Mot. at 14 (explaining that the "Settlement here will rely on

12   [the claim forms investors submitted to the Receiver documenting their losses] to allocate

13   settlement proceeds proportionally based on losses already reported to the Receiver").

14           **ii.      Superiority**

15           The superiority requirement tests whether "a class action is superior to other available

16   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The

17   Court considers four non-exclusive factors:

18                      (1) the class members' interests of each class member in individually
19                      controlling the prosecution or defense of separate actions; (2) the
                        extent and nature of any litigation concerning the controversy already
20                      commenced by or against the class; (3) the desirability of
                        concentrating the litigation of the claims in the particular forum; and
21                      (4) the difficulties likely to be encountered in the management of a
                        class action.

22   *Id*. Here, the Court concludes that a class action enables the most efficient use of Court and

23   attorney resources and reduces costs to the class members by allocating costs among them.

24   Further, this forum is appropriate, and there are no obvious difficulties in managing this class

25   action.

26           The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are

27   met.

28

10

### iii.    Class Representative and Class Counsel

Because the Court finds that Named Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Named Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel has efficiently investigated and litigated this case. Alan Rosca and Paul Scarlato formed proposed Class Counsel, Rosca Scarlato, LLC, in 2022, but represent that they each have many years of experience with class action litigation and have handled financial fraud cases in the past. *See generally* Dkt. No. 129-1, Ex. B. Accordingly, the Court appoints Rosca Scarlato, LLC as class counsel.

## III.    PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A.    Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

2   the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir.

3   2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).  A

4   more "exacting review is warranted to ensure that class representatives and their counsel do not

5   secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a

6   duty to represent." *Id*. (quotations omitted).

7          "The Court cannot . . . fully assess [the fairness] factors until after the final approval

8   hearing; thus, a full fairness analysis is unnecessary at this stage." *Uschold v. NSMG Shared

9   Servs., LLC,* 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quotation omitted).  "At the preliminary

10  approval stage, the settlement need only be potentially fair." *Id.* (quotation omitted).  Preliminary

11  approval is appropriate if the proposed settlement: (1) appears to be the product of serious,

12  informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class

13  representatives or other segments of the class; (3) falls within the range of possible approval; and

14  (4) has no obvious deficiencies.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

15  (N.D. Cal. 2007).  Courts lack the authority, however, to "delete, modify or substitute certain

16  provisions.  The settlement must stand or fall in its entirety." *Dennis*, 697 F.3d at 868 (quotation

17  omitted).

18          **B.    Analysis**

19                  **i.    Evidence of Conflicts and Signs of Collusion**

20          The first factor the Court considers is whether there is evidence of collusion or other

21  conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to

22  look for "subtle signs of collusion," which include whether counsel will receive a disproportionate

23  distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an

24  arrangement where defendant will not object to a certain fee request by class counsel)," and

25  whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id.*

26          At this stage, class counsel's requested fee award does not appear to constitute a

27  disproportionate share of the settlement agreement.  Under the Settlement Agreement, class

28  counsel can request up to $937,000 in attorneys' fees, which is 25% of the total cash benefit

available to the class, and litigation expenses of no more than $145,000.  Mot. at 15–16.

Ultimately, the reasonableness of any requested fees will have to be evaluated in light of the actual

benefit to the class and class counsel's lodestar at the final approval stage.

The parties represent that this is a "non-reversionary settlement and the entire $3.75

million Settlement Fund is for the benefit of the Settlement Class, regardless of how many claims

are submitted."  Mot. at 5.  The Court is satisfied with the parties' proposed distribution plan and

agrees that there is no reverter provision that would return unclaimed funds to the defendant.

Given that Class Counsel will not request a disproportionate amount of the settlement

agreement in fees and that other signs of collusion or conflict are not present, the Court finds that

this factor weighs in favor of preliminary approval.

### ii.    *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is

appropriate.  A *cy pres* award must qualify as "the next best distribution" to giving the funds to

class members. *Dennis*, 697 F.3d at 865 (quotation omitted).  "Not just any worthy recipient can

qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the

plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted).  That is to say, a *cy pres*

award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

silent class members, and must not benefit a group too remote from the plaintiff class." *Id.*

(quotation omitted).  A *cy pres* distribution is not appropriate if there is "no reasonable certainty

that any class member would benefit from it." *Id.* (quotation omitted).

Here, the parties selected the Victim Connect Resource Center, a non-profit that assists

"victim of investment fraud, including specifically Ponzi schemes."  Dkt. No. 135 at 1.  The Court

preliminarily finds that the Victim Connect Resource Center shares the interests of the Class

Members in facilitating redress for victims of investment fraud.  Accordingly, the Court

preliminarily finds that there is a sufficient nexus between the cy pres recipient and the class.

### iii.    Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment

to any Class Member.  The Ninth Circuit has instructed that district courts must be "particularly

1   vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

2   infect negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir.

3   2011). For that reason, courts in this district have consistently stated that preliminary approval of

4   a class action settlement is inappropriate where the proposed agreement "improperly grants

5   preferential treatment to class representatives." *See In re Tableware Antitrust Litig.*, 484 F. Supp.

6   2d 1078, 1079 (N.D. Cal. 2007).

7        Although Named Plaintiffs are authorized to seek incentive awards, the Court will

8   ultimately determine whether each Plaintiff's individual award is appropriate in light of their role

9   and responsibilities as Named Plaintiff. Incentive awards "are intended to compensate class

10   representatives for work done on behalf of the class, to make up for financial or reputational risk

11   undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th

12   Cir. 2009). Class representatives must provide sufficient evidence to allow the Court to evaluate

13   their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to

14   protect the interests of the class, the degree to which the class has benefitted from those actions, . .

15   . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'"

16   *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). Under the Settlement

17   Agreement, Class Representatives are entitled to a service award, subject to the Court's approval.

18   Settlement Agreement, ¶ J.

19        Lead Counsel requests that the "Court permit them to include in the Notice that Lead

20   Counsel intends to apply for a service award in the amount of $10,000 each to Plaintiffs Annie

21   Chang, Ann Chang, Oliver Chang, Melanie Gonzales and Gary Gonzales." Mot. at 24. The Court

22   will permit Lead Counsel to include this information in the notice but will consider the evidence

23   presented at the final approval hearing and evaluate the reasonableness of any incentive award

24   request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that

25   this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that

26   "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis

27   omitted)).

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

#### iv.      Settlement within Range of Possible Approval

The Court must also consider whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F. Supp. 2d at 1080.  This requires the Court to evaluate the strength of Plaintiff's case.

Plaintiffs have explained the significant risks, expense, and delay that they would face in continuing to litigate this case. *See* Mot. at 12-13.  According to Plaintiffs, litigation of these claims through trial would present significant challenges to prevailing on the merits because they would need to overcome several substantial hurdles including class certification, summary judgment, trial, and appeal.  *Id.* Plaintiffs estimate a total loss of just over $100 million.  Mot. at 10–11.  Plaintiffs also state that the Receiver in the SEC action is holding approximately $70 million "in cash in property-specific accounts" and that it is "likely that a significant percentage will go to [the proposed Class Members], making the out-of-pocket losses suffered by the Class far less than $100 million." Mot. at 11 (footnote omitted).   Plaintiffs further point out that "[e]ven without considering any recovery by the Receiver, the proposed settlement amounts to approximately 3.75% of estimated losses."  Mot. at 11.  Given that Plaintiffs are planning to use the Receiver's list to contact the Class Members and that the Receiver has had a 100% response rate to the claims, Plaintiffs also expect "that the percentage of Class Members who submit claims will be very high."  Mot. at 15.

The Court finds that the settlement amount, given the risks outlined by Plaintiffs, weighs in favor of granting preliminary approval.

#### v.      Obvious Deficiencies

Finally, the Court considers whether there are obvious deficiencies in the settlement agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when

1 submitting their motion for final approval.

## IV.     PROPOSED CLASS NOTICE PLAN

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). The "best notice . . . practicable under the circumstances[] includ[es] individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Class Counsel proposes mailing Class Members a copy of the notice, using the address list compiled by the Receiver in the Receivership action. Mot. at 21. Class Counsel states that the list is likely "overly inclusive and captures all of the prospective Class Members." Class Counsel also notes that the Receiver has gathered email addresses for most of the Claimants in the Receiver action which it proposes could be an additional point of contact. Mot. at 21-22. The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the parties' proposed notice plan, described in detail above, and the proposed notice (Dkt. No. 135-4) along with the proposed claim form (Dkt. No. 135-5), is the best practicable form of notice under the circumstances and satisfies Rule 23 requirements.

## V.     CONCLUSION

The Court **GRANTS** Plaintiff's motion for preliminary approval of class action. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates, with calendar dates rather than contingent dates, for each event listed below, which shall be submitted to the

United States District Court
Northern District of California

16

Court within 21 days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail, email Notice to Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 35 days after the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The Court **VACATES** all other deadlines.  The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:    12/20/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

17