UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE CHANG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 19-cv-01973-HSG<br><br>**ORDER GRANTING MOTIONS FOR ATTORNEY FEES, COSTS, AND SERVICE AWARDS AND FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 139, 141 |

Before the Court are Plaintiffs' motions for attorneys' fees and expenses and service awards for lead plaintiffs, and for final approval of this class action settlement. Dkt. No. 139, 141. The Court held a final fairness hearing on July 13, 2023. Dkt. No. 143. Following the hearing and at the Court's request, Plaintiffs submitted supplemental briefing on the two motions. Dkt. No. 146. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motions.

**I.     BACKGROUND**

    **a.  Factual Allegations and Procedural Background**

Plaintiffs bring this putative class action alleging Defendant Wells Fargo aided and abetted an alleged Ponzi scheme (the "Equitybuild Scheme" or the "Scheme") conceived by non-parties Jerome and Shaun Cohen (the "Cohens") and their entities Equitybuild, Inc. and Equitybuild Finance, LLC f/k/a Hard Money Company, LLC (collectively, "Equitybuild"). Dkt. No. 1 ("Compl.") ¶¶ 1–5; Dkt. No. 129 at 1 n.3. Equitybuild solicited investors by promising them returns flowing from real estate purchases, renovations, and developments in Chicago. Compl. ¶¶ 20–21. Plaintiffs allege that the Equitybuild Scheme was a "sham," as the Cohens "raised money from investors through misrepresentations and omissions, siphoned much of it, improperly commingled it, used it for Ponzi payments to other investors, and skimmed between 15% and 30%

off each investment by taking undisclosed fees." Compl. ¶ 4.

In August 2018, the SEC filed a complaint in the Northern District of Illinois against Equitybuild and the Cohens, charging them with fraud under U.S. securities laws and misuse and misappropriation of investor money. *Id.* ¶¶ 58-60; Dkt. No. 129-1 ¶ 7. That court appointed a Receiver (the "Equitybuild Receiver") who, among other things, identified and issued notices to 835 persons or entities "who might have a claim against the Equitybuild Scheme." Dkt. No. 129-1 ¶¶ 41–48. The Receiver received claims from all 835 claimants.[1] *Id.* ¶ 51.

Plaintiffs filed their Complaint on April 12, 2019, alleging that Wells Fargo, as the only bank Equitybuild used, "aided and abetted the Equitybuild Scheme." Dkt. No. 129 at 3; *see* Compl. ¶¶ 66-68. The Complaint asserted claims for 1) aiding and abetting fraud; 2) aiding and abetting breach of fiduciary duty, and 3) negligence. *See generally* Compl. Wells Fargo moved to dismiss the Complaint, which the Court denied as to the first two claims, and granted, with leave to amend, as to the third. Dkt. Nos. 37, 62. Following substantial discovery concerning Plaintiffs' remaining claims, one unsuccessful mediation before the Honorable Andrew J. Guilford (Ret.) in February 2021, and renewed settlement discussions, the parties ultimately executed an agreement to settle this case on June 16, 2022. *See* Dkt. No. 129-1, Ex. A ("Settlement Agreement").

This Court granted Preliminary Settlement Approval in December 2022. Dkt. No. 136. Plaintiffs then filed a Motion for Attorneys' Fees, Expenses, and Service awards on April 4, 2023, Dkt. No. 139, and for Final Approval of Class Action Settlement on June 8, 2023, Dkt. No. 141. Both were unopposed. Dkt. No. 140, 142. The parties appeared before the Court for a fairness hearing on the motions in July, Dkt. No. 143, and filed requested supplemental briefing shortly thereafter, Dkt. No. 146. Among other things, the supplemental briefing provided preliminary monetary estimates for individual class member recovery, and confirmed that this settlement would be additive to, not duplicative of, the Receiver's work in the SEC action. *See* Dkt. No. 146.

b. **Settlement Agreement**

Key terms of the parties' Settlement Agreement, Dkt. No. 129-1, Ex. A ("Settlement

---

[1] The Receiver has provided his mailing list to Plaintiffs, along with a Master Claim List with the amount of each claim for purposes of sending class notices in this action. Dkt. No. 129-1 ¶ 48.

Agreement" or "SA"), are as follows:

    i. <u>The Class</u>

The Class consists of "all persons and entities who invested in the Equitybuild Scheme and were damaged thereby." Settlement Agreement, § 1.5; *see also* Dkt. No. 135-4, Ex. D ("Class Notice").

    ii. <u>Notice to the Class & Settlement Website</u>

The Settlement Agreement directed that each member of the class be sent a notice of the Settlement and a Claim Form. Settlement Agreement, § 7.3; Dkt. No. 129-1 ¶¶ 49–50. Per the Agreement, the Notice directed Class Members to a settlement website containing copies of relevant motions and orders. Settlement Agreement, § 7.7; Class Notice at 2–4, 7. The Notice and Claim Form also provided class members agreed-upon information regarding, among other things, the natures of the claims, class, and settlement terms (including the amounts requested for attorneys' fees, costs, and service awards), opt-out and objection rights, and details about the final approval hearing. *See* Class Notice; Dkt. No. 135-5, Ex. E (Claim Form).

    iii. <u>Monetary Relief, Plan of Allocation & *Cy Pres* Distribution</u>

The Settlement Fund consists of a payment from Wells Fargo of $3,750,000 into an escrow account. Dkt. No. 129 at 4–5; Settlement Agreement, § 3.1.1. The gross settlement fund includes "payments to Settlement Class Members, payments for costs and expenses related to Class Notice as well as the implementation and administration of the Settlement, payment of Attorneys' Fees and Expenses for Class Counsel, and payment of the Service Award for the Class Representatives, as approved by the Court Settlement Agreement." Settlement Agreement ¶ J. Class members are entitled to relief relative to the dollar amount they claim (and if necessary, substantiate) as a loss on their claim forms. Settlement Agreement § 3.1.3

With the notice and claims process now completed, Plaintiffs have greater visibility into the likely monetary distribution than they did at the preliminary approval stage. With 588 claimants, class counsel calculate that on a net basis (assuming this Court approves the proposed costs, fees, and service awards), the average claimant will receive a monetary recovery of $4,351.64, with a low of $11.89 based on a claimed loss of $503.31, to a high of $82,710.87 based

1  on a claimed loss of $3,500,000.[2]  *See* Dkt. No. 146 at 4.  If there is a balance remaining after
2  distribution, it will not revert to Defendant; instead, once it is no longer feasible to make
3  additional distributions, any remaining balance will be donated to the Victim Connect Resource
4  Center, a non-profit that assists "victims of investment fraud, including specifically Ponzi schemes
5  . . . ."  Settlement Agreement § 1.39; Dkt. No. 135 at 1.

**II.    DISCUSSION**

**a.  Final Settlement Approval**

i.  Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on December 20, 2022, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 136 at 6–10.

ii.  The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'"  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

---

[2] As class counsel explains, these calculations assume that the 57 currently pending claims are ultimately validated in full.  Dkt. No. 146 at 4.  Of these, 47 claims seek higher loss amounts than the amounts prepopulated in their claim forms (based on the numbers obtained from the Receiver) and are currently being reviewed against backup documentation submitted by the claimants.  *Id.*  The remaining 10 claims, which also seek higher amounts than the amount prepopulated in their claim forms, are still awaiting backup documentation.  Claimants have received deficiency letters requesting necessary documentation, which the settlement administrator will consider if and when it is submitted.  *Id.*  Given this, the Court recognizes that when finalized, the average recovery and range of recovery may vary somewhat from the most recent figures Plaintiffs provided.

1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider to determine whether "class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Roes*, 944 F.3d at 1043.  These include: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See McKinney-Drobnis*, 16 F.4th at 609 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

1. *Adequacy of Notice*

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice

1    must "clearly and concisely state in plain, easily understood language" the nature of the action, the
2    class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P.
3    23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class
4    members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*,
5    18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable"
6    notice, not "actually received" notice).

7           The Court finds that the notice plan previously approved by the Court was duly
8    implemented and complies with Rule 23(c)(2)(B).  Beginning in February 2023, the Court-
9    appointed Claims Administrator, Rust Consulting, issued notice packets (consisting of the Class
10   Notice and Claim Form) by first-class mail to class members using records obtained from the
11   Equitybuild Receiver.  Dkt. Nos. 141 at 3–4 (citing Dkt. Nos. 141-1 ["Rabe Decl."]; 141-1, Ex. A
12   [notice packet]).  By June 1, 2023 (less than a week before the June 8 claim filing deadline), the
13   Claims Administrator had mailed 826 total notice packets; of those, only 25 proved undeliverable.
14   *See id.* at 4 (noting the delivery success rate was approximately 97%).  In addition to mailing
15   notice packets, the Claims Administrator also established, pursuant to the Settlement Agreement, a
16   website posting the Class Notice and Claim Form, which logged 7,887 visits between February 8
17   and June 1, 2023.[3]  *Id.*  The Claims Administrator also set up a toll-free telephone hotline offering
18   pre-recorded information about the settlement and an option to speak with a live agent.  *See* Rabe
19   Decl. ¶ 17.  Between February 8 and June 1, 2023, the Administrator fielded 113 calls to the
20   number.  *Id.*  As of June 1, 2023, class counsel had not received any opt-out requests or objections.
21   Dkt. No. 141 at 5; Rabe Decl. ¶¶ 18, 19.  In light of these facts, the Court finds that the parties
22   have sufficiently provided the best practicable notice to class members.

                         2.   *Fairness, Adequacy, and Reasonableness*

24          Having found the notice procedures adequate under Rule 23(e), the Court next considers
25   whether the entire settlement comports with Rule 23(e).
26          In deciding the motion for preliminary approval, the Court considered all three signs of

---

[3] The settlement website may be found at www.EquityBuildSettlement.com.  *See* Rabe Decl. ¶ 13.

6

collusion that the Ninth Circuit has identified. *See* Dkt. No. 136 at 12–13; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to class members; and the Court still carefully scrutinizes the requests for attorneys' fees and incentive awards to ensure class members' interests are protected under the settlement. *See* Section II.b.i.

The Court further finds that other factors discussed in *McKinney-Drobnis* also indicate that the proposed settlement is fair, adequate, and reasonable.

### a. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount secured in this settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in further litigation. Were the case to proceed, Plaintiffs' counsel anticipate numerous hurdles to class recovery despite having confidence in their claims. *See* Dkt. No. 141 at 7–11. First, Plaintiffs' counsel emphasize that Defendant Wells Fargo has "steadfastly" denied liability and maintains there is "no evidence" for Plaintiffs' allegations. *Id.* Plaintiffs recognize that with just circumstantial evidence, they face an uphill battle proving that Wells Fargo had *actual* knowledge of the Equitybuild Scheme perpetrators' fraud and breach of duty, which is a critical element of their claims. *Id.* Second, counsel expect Defendant to "hotly contest[]" any class certification motion by arguing that Plaintiffs' claims require individualized inquiry across different state laws, and then petitioning the Ninth Circuit for an interlocutory appeal should certification be granted. *Id.* at 9. Plaintiffs'

7

counsel further stress that at trial, overcoming Defendant's arguments that they did not cause Plaintiffs' losses may be difficult, and could jeopardize a meaningful damage award. *Id.* at 10. The Court finds credible Plaintiffs' contention that the case has presented "difficult legal and factual issues that required creativity and sophisticated analysis," and that continued litigation of these issues would require the investment of significant additional time and resources by the Court and the parties. *Id.*

In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class and avoided these risks. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### b.  Settlement Amount

The Court previously concluded that the amount of the settlement was within the range of possible approval. *See* Dkt. No. 136 at 15. Its opinion has not changed. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. March 18, 2016) (citing cases).

Plaintiffs' damages expert estimates that the maximum losses recoverable at trial would be approximately $100 million before any recovery by the Equitybuild Receiver. Dkt. No. 141 at 12. Putting aside recovery by the Receiver, the total settlement amount of $3.75 million represents approximately 3.75% of total estimated losses, but "a much higher percentage of plausibly recoverable damage considering class certification, summary judgment, trial and post-trial risks." *Id.* Given these risks, Plaintiffs view this outcome as "very favorable and reasonable." *Id.* at 3. The Court agrees, particularly as "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Further, the total settlement amount promises the 588 current claimants meaningful

8

individual recovery.  As discussed above, on a net basis, the *average* claimant will recover around $4,350, with a low of $11.89 based on a claimed loss of $503.31 and a high of $82,710.87 based on a claimed loss of $3,500,000.  *See* Dkt. No. 146 at 4.  The Court finds that this recovery is significant, especially when weighed against the litigation risks in this case, such that this factor weighs in favor of approval.

### c. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Plaintiffs' counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

By the time the parties reached a settlement, the parties had "vigorously litigated the [a]ction and had a well-founded and realistic understanding of the strengths and weaknesses of the claims and defenses asserted." Dkt. No. 141 at 13.  Before filing their complaint, Plaintiffs thoroughly investigated the legal theories and facts.  *Id.*  Once filed, the parties completed "extensive" briefing and argument on Defendant's 12(b)(6) motion to dismiss the complaint, and engaged in years of "hard-fought" discovery which involved "111,000 pages of documents produced by Defendant, 26,000 pages produced by Plaintiffs and over 14,000 pages of documents produced by third parties" – as well as 3.16 million pages from the Equitybuild Receiver.  *Id.*  Additionally, the parties engaged in "extensive" settlement negotiation, including mediation, which helped the parties refine their understanding of their relative positions.  *Id.*

For these reasons, this factor supports approval.  The Court is persuaded that Plaintiffs' counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits.  *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946 at *12 (N.D. Cal. Feb. 11, 2016) (finding this factor weighed in favor of approval where parties engaged in pre-filing investigation, motion to dismiss briefing, discovery, and mediation).

### d. Reaction of Class Members

The reaction of the class members supports final approval, as no members opted out or objected.  "[T]he absence of a large number of objections to a proposed class action settlement

raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As discussed above, the settlement terms were publicized through a notice process this Court has deemed adequate. The Administrator mailed 826 notice packets and received 588 claims from injured investors, almost all of which have been processed. Importantly, no class member filed an objection or exclusion request, which "strongly supports [the settlement's] fairness, reasonableness, and adequacy . . . ." *Martin v. AmeriPride Servs., Inc.*, No. 08CV440-MMA JMA, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011). Since no potential class members have raised concerns or opted out, the Court finds that the positive reaction of the settlement class supports approval of the settlement.

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice.[4] Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED.**

### b. Attorneys' Fees, Costs, and Service Awards

In its unopposed motion and consistent with the Settlement Agreement, class counsel asks the Court to approve an award of $937,500 in attorneys' fees and $128,723.32 in costs. Dkt. No. 139 at 1–21. Counsel also seeks a $10,000 service award for each of the named Plaintiffs. *Id.* at 21–23.

---

[4] The Court has also reviewed the proposed release, Dkt. No. 129-1, Ex. A at 41–43, and finds that it is consistent with Ninth Circuit law and the identical factual predicate rule, and further underscores the adequacy of the settlement. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (quotation omitted).

i. Attorneys' Fees & Costs

1. *Legal Standard*

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In common fund cases, 25% of the total pool is the "benchmark" for a reasonable fee award. *See, e.g.*, *In re Bluetooth,* 654 F.3d at 942. Even where the benchmark is requested, though, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. These circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See id.* at 1048–50.

In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id*. The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

2. *Discussion*

Plaintiffs' counsel seeks $937,500 in attorneys' fees, which represents the "benchmark" 25% of the common fund and is the maximum amount claimable under the parties' Settlement

11

1    Agreement.  *See* Dkt. Nos. 139 at 3; 136 at 12.  Counsel urges that its requested fees are

2    appropriate under the "percentage of the fund" method.  Dkt. No. 139 at 11–13.  The Court agrees

3    that the request is reasonable.

4           The first and most critical factor in assessing an attorneys' fee request is "the degree of

5    success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody*

6    *Int'l, Inc.*, 69 F.4th 994, 997 (9th Cir. 2023) ("The touchstone for determining the reasonableness

7    of attorneys' fees in a class action is the benefit to the class.").  As discussed, Plaintiffs' counsel

8    obtained a significant recovery for the class by securing a $3.75 million non-reversionary

9    settlement fund.  Even after factoring in fees, costs, and service awards, each class member stands

10   to receive more than $4,350 on average for their injuries.  The Court agrees that this is a good

11   result that confers benefits on the class.  The fact that no class members have objected or opted out

12   only buttresses that conclusion.

13          This recovery – which represents approximately 3.75% of *all* possibly recoverable

14   damages at trial – must be considered in light of the significant risks that Plaintiffs would face in

15   further litigation.  In fact, the risk that further litigation might result in Plaintiffs not recovering *at*

16   *all*, particularly in a case involving complicated legal issues such as purported aiding and abetting

17   of fraud, is a significant factor in the award of fees.  *See Vizcaino*, 290 F.3d at 1048.  As Plaintiffs

18   explained, they credibly anticipate hurdles proving "both that the defendant had actual knowledge

19   of the underlying fraud and that it was also the cause of their injuries."  Dkt. No. 139 at 14–15.

20   Plaintiffs also expect a hard fight to certify a nationwide class and survive Defendant's eventual

21   move for summary judgment.  *Id.*  Given these challenges, this factor weighs in favor of approving

22   the fee request.  *See Vizcaino*, 290 F.3d at 1048.

23          Counsel also litigated this case skillfully and professionally against a well-resourced

24   Defendant.  Counsel carefully crafted and then successfully defended its complaint against

25   Defendant's motion to dismiss, and also obtained voluminous records from various sources,

26   including the Equitybuild Receiver.  Dkt. No. 139 at 17.  The risk that counsel took in litigating

27   this case on a contingency basis for the last few years weighs in favor of a substantial attorneys'

28   fee award.  *See Vizcaino*, 290 F.3d at 1050.  Here, counsel spent significant time on this case

without any certainty that they would be compensated. Dkt. No. 139 at 16.

Outcomes in similar cases also support awarding counsel the benchmark 25% of the common fund. *See, e.g.*, *Jordan v. Paul Fin., LLC*, No. CV 07-04496 SI, 2013 U.S. Dist. LEXIS 164651, at *10 (N.D. Cal. Nov. 19, 2013) (awarding 25% of $1.75 million settlement in case involving aiding and abetting claims); *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), (C.D. Cal. June 9, 2008) (awarding 33% of settlement fund); *Joint Equity Comm. of Invs. of Real Est. Partners, Inc. v. Coldwell Banker Real Est. Corp.*, No. SACV-10-401 AG (MLGx) (C.D. Cal. 2012) (awarding 35% of settlement to counsel representing investors who lost money in fraudulent real estate securities scheme); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHx), 2015 U.S. Dist. LEXIS 83499, at *17 (C.D. Cal. June 17, 2015) (awarding 28% of $17.5 million settlement fund in pyramid scheme case).

As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").

Class counsel represent that their firms spent a total of 2,738.60 hours on this case for a lodestar of $1,733,734.00. Dkt. No. 139 at 18–19. Based on the billing summaries submitted, the Court is persuaded that counsel expended a reasonable amount of time on this matter. *See* Dkt. Nos. 139-1, Exs. F & G; 139-3. Having reviewed the declarations of Plaintiffs' counsel regarding their billing rates and the prevailing billing rates of the local legal community, the Court is further satisfied that counsel have requested reasonable hourly rates for their firms' work.[5] *See* Dkt. Nos. 139-1 (Scarlato Decl.); 139-3 (Cervantez Decl.); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[A]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . .

---

[5] The Court notes that the hourly rates of Plaintiffs' counsel Rosca Scarlato LLC range from $725 to $825 for partners, $300 to $425 for of counsels, $300 to $475 for associates, $300 for an experienced document review lawyer, $205 for paralegals, and $275 for a legal analyst, and that the hourly rates of Plaintiffs' counsel Altshuler Berzon LLP range from $825 to $1275 for partners, $550 to $700 for associates, and $325 for paralegals. Dkt. Nos. 139-1 (Scarlato Decl.) ¶¶ 65–66.

13

are satisfactory evidence of the prevailing market rate."). The Court finds that the billing rates used by class counsel to calculate the lodestar are in line with (and in some cases, significantly discounted from) prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable).

The Court therefore finds the Plaintiffs' lodestar reasonable, and finds it significant that Plaintiffs are requesting substantially less in fees than the amount they reasonably incurred. Here, the requested fee ($937,500) is a *negative* multiplier of .54 as compared to the $1,733,734.00 lodestar, Dkt. No. 139 at 18, which "further demonstrates the reasonableness of the fee request." *Taylor v. Shutterfly*, No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021) (collecting cases); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("[A] multiplier less than 1.0 is below the range typically awarded by courts[.]").

An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d 16 at 19. Class counsel are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.* Here, counsel request $128,723.32, which is less than the $145,000 estimate reflected in the preliminary request. *See* Dkt. No. 136 at 13. To support their request, counsel have broken down expenses by category, including costs for experts, mediation, document management and storage, travel costs, service of process fees, and more. *See* Dkt. Nos. 139-1 (Scarlato Decl.), Ex. H; 139-3 (Cervantez Decl.), Ex. C; 139-2 (Gardner Decl.), Exs. A & B. Most of the claimed costs (approximately 60%) stem from counsel's use of two e-discovery platforms; the other major costs arose of out Plaintiff's retention of three experts and an experienced mediator. Dkt. No. 139-1 at 19. The Court is persuaded that the claimed costs are reasonable,

were necessary for prosecution of the action, and should be reimbursed.

In recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to class counsel $937,500 in attorneys' fees and $128,723.32 in costs, for a total of $1,066,223.32.

          ii.   <u>Service Award</u>

Lastly, Plaintiffs' counsel requests a service award of $10,000 for each of the five named plaintiffs: Annie Chang, Ann Liu, Oliver Chang, Melanie Gonzales and Gary Gonzales.[6] While awards are discretionary, "[i]t is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *18 (N.D. Cal. Feb. 6, 2012). Service awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. If they choose to grant such awards, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted).

In the Ninth Circuit, service awards of up to $5,000 are "presumptively reasonable." *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021). However, larger awards can be appropriate. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG, 2019 U.S. Dist. LEXIS 123676, at *21 (N.D. Cal. July 24, 2019) (granting $10,000 service award); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 U.S. Dist. LEXIS 41285, at *31 (N.D. Cal. Feb. 3, 2021) (granting $20,000 service awards). To evaluate the reasonableness of a proposed service award, courts look to factors such as the

---

[6] Annie Chang and Oliver Chang own and manage named Plaintiffs, Tiger Chang Investments, LLC and Asians Investing in Real Estate, LLC. Gary and Melanie Gonzales control named Plaintiff, G&M You-Nique Property LLC.

15

representative's service to the class, investment of time, and reputational harm.  *Staton*, 327 F.3d at 977.  Another important consideration is the proportionality between the incentive award and the range of class members' settlement awards.  *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. 10-cv-5966-LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013).

        In this case, the relevant factors support the requested service award.  First, no class members objected to the proposed service award, which tends to suggest that class members are satisfied that their representatives did confer a benefit.  Second, lead plaintiffs have spent significant time on this case, dedicating more than 860 hours across approximately five years to fulfilling their duties as class representatives.  Dkt. No. 139-1, Ex. A–E.  These duties involved gathering and reviewing documents, communicating extensively with counsel, participating in mediation, preparing for depositions, responding to discovery requests, and performing other necessary functions.  *Id.*  Annie Chang attests that she invested 175 hours fulfilling her duties. Dkt. No. 139-1, Ex. A.  Ann Liu estimates she spent 180 hours on this case; her husband Oliver Chang estimates he spent 160.  *Id.*, Exs. B & C.  Melanie Gonzales attests that she expended around 175 hours in her role; her husband Gary Gonzales estimates 175.  *Id.*, Exs. D & E.  The Court finds these contributions considerable.

        Third, the Court finds that the relationship between the size of the awards and class recovery does not raise red flags.  In this case, the proposed service award represents 2.3 times more than the average class member's recovery of approximately $4,351, but still a fraction of the largest recovery ($82,710.87).  On the whole, the Court is persuaded that a $10,000 service award is not so disproportionate to the anticipated class recovery as to warrant denial.  *See, e.g.*, *Crump v. Hyatt Corp.*, No. 20-CV-00295-HSG, 2023 WL 1997770 (N.D. Cal. Feb. 14, 2023) (holding that where the lead plaintiff invested 35 hours on the case and requested a recovery 400 times greater than the average class member's recovery, a $10,000 service award was unsupportable).

        Further, the Court is cognizant that service awards can, in some circumstances, introduce a conflict between the interests of the lead plaintiffs and those of the class, but does not believe that the proposed award threatens to destroy adequacy of lead plaintiffs' representation in this case. The named plaintiffs lost a total of $2,653,981 in the Equitybuild scheme, and now stand to recoup

just 1.9% of their aggregate losses if the Court awards a total of $50,000 in service awards. Dkt. No. 139-1 at 22. Given that the proposed awards cannot come close to making the lead plaintiffs whole, and given that each class member (including each lead plaintiff) recovers on a pro rata basis from the settlement fund, it follows that the lead plaintiffs retained a vested personal interest in maximizing the total settlement fund for the class. And from their own sworn declarations and counsel's discussion of their contributions, it appears they worked diligently to do just that. Dkt. Nos. 139-1 at 21–22; 139-1, Exs. A–E.

For these reasons, the Court finds that in this case – where class representatives each invested between 160-180 hours and where the service award is only around 2.3 times greater than the average class member's recovery – a $10,000 service award for each of the named plaintiffs is justified. The Court **GRANTS** the requested service of award of $10,000 for lead plaintiffs Annie Chang, Ann Liu, Oliver Chang, Melanie Gonzales, and Gary Gonzales.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 141 and **GRANTS** the motion for attorneys' fees and incentive award, Dkt. No. 139. The Court awards attorneys' fees in the amount of $937,500 and litigation expenses in the amount of $128,723.32. The Court further awards $10,000 as an incentive award to each of the five named Plaintiffs.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

Within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the settlement agreement), the parties must file a Post-Distribution Accounting, which provides the following information:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms

submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each *cy pres* recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated:    10/19/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge